*In re* TREJO MINORS

Docket No. 112528. Argued November 10, 1999 (Calendar No. 10). Decided July 5, 2000.

The Department of Social Services sought termination of the parental rights of Liberty A. and Gregory Trejo in their minor children, Gregory T., Timothy R., and Samantha L. Trejo, in the Oakland County Probate Court. The court, Barry M. Grant, J., ordered termination, concluding that the department had proven grounds for termination under MCL 712A.19b(3)(c)(i), (g); MSA 27.3178(598.19b)(3)(c)(i), (g) by clear and convincing evidence and that no showing had been made that termination was not in the children's best interests. The mother appealed, and the Court of Appeals, HOOD, P.J., and MARKMAN and TALBOT, JJ., affirmed in an unpublished opinion per curiam (Docket No. 200486). The mother appeals.

In an opinion by Chief Justice WEAVER, joined by Justices KELLY, TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

MCL 712A.19b(5); MSA 27.3178(598.19b)(5) makes termination of parental rights mandatory if the petitioner establishes a statutory ground for termination under subsection 19b(3) unless the court finds that termination clearly is not in the child's best interest. Subsection 19b(5) is constitutional.

1. Under MCL 712A.19b(3); MSA 27.3178(598.19b)(3), a petitioner for the termination of parental rights bears the burden of proving at least one ground for termination. If the court finds clear and convincing evidence that the petitioner has proven one or more grounds for termination, it must order termination of parental rights and that additional efforts for reunification of the child with the parent not be made, unless it finds that termination of parental rights is clearly not in the child's best interest.

2. The best interest clause of subsection 19b(5) does not impose a burden of production on the party opposing termination. Nor does it impose any further burden of proof on the petitioner once the petitioner has carried its burden of establishing one or more grounds for termination. Rather, it unambiguously provides that once the petitioner proves at least one ground for termination by clear and convincing evidence, the court must order termination.

However, read in its entirety, subsection 19b(5) preserves to the court the opportunity to find that termination is clearly not in the child's best interests despite the establishment of one or more grounds for termination. Under subsection 19b(5), the court may consider evidence introduced by any party when determining whether termination is clearly not in a child's best interest. Further, even where no best interest evidence is offered after a ground for termination has been established, subsection 19b(5) permits the court to find from evidence on the whole record that termination is clearly not in a child's best interests.

3. Subsection 19b(5) is constitutional, and its best interest provision provides an opportunity for the court to find that termination is clearly not in the child's best interest, despite the establishment of one or more grounds for termination. A respondent must be afforded written notice of a hearing on the petition to terminate parental rights. MCL 712A.19b(3); MSA 27.3178(598.19b)(3) requires that the petitioner prove by clear and convincing evidence at least one ground for termination, and the respondent is afforded the opportunity to present evidence and witnesses at a hearing on the termination of parental rights and to confront and cross-examine the petitioner's witnesses. The court must state its findings and conclusions on the record or in writing. Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under subsection 19b(5), the liberty interest of the parent no longer includes the right to custody and control of the children. The parent's interest in the companionship, care, and custody of the child gives way to the state's interest in the child's protection. The best interest provision of subsection 19b(5) provides the court the opportunity to find that termination clearly is not in the child's best interest. The primary beneficiary of this opportunity is intended to be the child. Secondarily, the provision affords respondents additional protection by permitting the court to consider evidence, within the whole record, that termination is clearly not in a child's best interests.

4. The probate court did not clearly err in finding that the department had proven by clear and convincing evidence that two of the three alleged grounds for termination existed, and that there was clear and convincing evidence that termination was in the children's best interests.

Affirmed.

Justice CAVANAGH, concurring in part and dissenting in part, stated that the probate court clearly erred in finding that petitioner

had proven statutory grounds for termination by clear and convincing evidence.

There was confusion about how to proceed with the termination and best interests hearings. A court must find, at the termination stage, clear and convincing evidence that the statutory grounds for termination have been proven by the petitioner. By ruling that it would hear best interest evidence at a later time, it relied on insufficient evidence.

MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) does not require that every goal listed in a parent-agency agreement be complied with in order to spare the parent from termination of rights. In fact, no reference is made in the statute regarding such agreements. Instead, a parent-agency agreement is a service plan that provides guidance to the agency, the parent, and the court. It provides both services to be provided, and expectations of the parent. It is not a list of binding requirements that necessarily would lead to termination under subsection 19b(3)(g) if there is noncompliance with one or two. In this case, the court found that the respondent had failed to comply with only two of the eight requirements in the parent-agency agreement. Because evidence to support the respondent's violation of the housing goal requirement was lacking, and because the therapy issue requirement was extremely vague, the court clearly erred in finding clear and convincing evidence that grounds under subsection 19b(3)(g) were proven.

It must be kept in mind that the fundamental liberty interest of natural parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the state. It is of utmost importance that probate courts follow the statutorily imposed guidelines in determining whether the grounds for termination have been met by clear and convincing evidence. In this case, the probate court, in its original adjudication, failed to do so.

Justice MARKMAN took no part in the decision of this case.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Daniel Lemisch*, Chief, Appellate Division, and *Joyce F. Todd*, Assistant Prosecuting Attorney, for the appellee.

*Thomas Lazar* and *Albert L. Holtz* for the appellant.

Amicus Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Susan A. Harris*, Assistant Attorney General, for the Attorney General.

WEAVER, C.J. This case involves an order terminating parental rights pursuant to MCL 712A.19b; MSA 27.3178(598.19b). Specifically, we address, on first impression, the constitutionality and operation of subsection (5) of this statute that was enacted by 1994 PA 264.[1] Appellant-respondent contends that subsection 19b(5) violates due process and that the probate court erred in terminating her parental rights.

We hold that subsection 19b(5) makes termination mandatory if the petitioner establishes a statutory ground for termination under subsection 19b(3) unless the court finds that termination is clearly not in the child's best interest. We hold further that subsection 19b(5) is constitutional.

For the reasons that follow, we affirm the termination of appellant-respondent's parental rights in this case.

## I. FACTS

Appellant-respondent (hereinafter respondent) was divorced in November 1994 and awarded legal cus-

---

[1] MCL 712A.19b(5); MSA 27.3178(598.19b)(5) states:

If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests.

tody of the couple's three children.[2] Respondent soon found herself unable to provide suitable housing and care for the children. On April 28, 1995, respondent approached the Department of Social Services (hereinafter petitioner) requesting placement in foster care for two of her three minor children, then ages one and three years old. Respondent expressed concern that she might verbally abuse the children. She had already placed her five-year-old son in the care of her parents.

On May 1, 1995, respondent was interviewed by petitioner, at which time she did not agree to the suggested assistance designed to keep the family intact. Testimony also revealed that respondent did not seek or accept assistance from other family members or friends. Instead, she took the two children to their father's place of work and left them. The father was also unable to provide suitable housing for the children.

Petitioner filed a complaint and a petition for temporary custody pursuant to MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1) in the Oakland County Probate Court, and a preliminary hearing was held on May 2, 1995. At the preliminary hearing, the court found that probable cause existed to support the allegations in the petition and ordered that the three children be placed in the care and custody of petitioner on May 2, 1995. Petitioner placed the two younger children in foster care and allowed the eldest child to stay with his maternal grandparents.

---

[2] The father has not appealed the Court of Appeals affirmance of the order terminating his parental rights. We, therefore, address only the facts and issues relevant to respondent's appeal.

At the pretrial hearing on May 15, 1995, both parents pleaded being responsible for allegations in an amended petition, including the allegations of failure to provide adequate housing and, as to the respondent, her fear that she would verbally abuse the children if they were left in her care.

Regular review hearings were held over the following twelve months. Pursuant to a series of parent-agency agreements,[3] respondent obtained transportation and a full-time job for an extended period. However, she failed to obtain or maintain housing adequate for the children. She moved five times from the beginning of the temporary wardship until the petition for the termination of her parental rights was filed in July 1996. Respondent did complete parenting classes after a slow start and over an extended time schedule, but her reviews from the completed classes were poor. Respondent also had difficulties complying with the individual therapy requirements of the agreement. She quit her first counselor abruptly. Her attendance at sessions with her second counselor was sporadic and her progress slow.

---

[3] In this case, the court ordered that respondent comply with the parent agency agreement in its July 14, 1995, dispositional order. Parent-agency agreements are voluntary agreements between the caseworker and the parent that obligate each to steps specifically tailored to the family's needs. However, as in this case, the requirements of parent-agency agreements often become part of the court order that implements the case service plan. MCR 5.973(A)(5)(b). Case service plans provide guidance to the agency, parent, and court in assessing a parent's progress toward reunification. They typically outline the services that will be provided and the expectations of the parents regarding services and visitations. MCL 712A.19; MSA 27.3178(598.19). Failure to substantially comply with a court-ordered case service plan "is evidence that return of the child to the parent may cause a substantial risk of harm to the child's life, physical health, or mental well being." MCR 5.973(C)(4)(b).

Respondent's visitations were supervised at first, but were ordered unsupervised after a June 1995 review hearing. At that time, all three children were placed together with the paternal grandparents. However, testimony revealed that the care of the three young children proved too difficult for the paternal grandparents. At a review hearing in September 1995, the paternal grandparents asked for assistance from respondent and other family members. Because they did not receive sufficient assistance from respondent or other relatives, the children's guardian ad litem filed an emergency review petition. After reviewing the petition filed on October 20, 1995, the three children were placed in foster care.

Initially, the children were not in the same foster care home. The five and three year old were placed together and the one and a half year old with a different foster care family. The children were separated until the foster family that had taken the older children received licensure that allowed them to have three children. The youngest child joined her siblings in April 1996.

There was testimony from the foster parents that the older children would act out—first, after unsupervised overnight visitations, and then, with increasing intensity, after every unsupervised visitation. At a review hearing in March 1996, the court ordered that the visits again be supervised and that the parents, who fought in front of the children, visit separately. During the supervised visits that followed, the caseworker observed that respondent was unwilling or unable to control her children's increasingly difficult and sometimes violent behavior.

Pursuant to MCL 712A.19a; MSA 27.3178(598.19a),[4] a permanency planning hearing was held on June 12, 1996. The court found that there continued to be no viable plan for the return of the children to either parent and no compelling evidence that the matter would improve in another three months. The court further found that it had not been demonstrated that initiating termination of parental rights proceedings would be adverse to the interests of the children.

Petitioner filed a petition to terminate parental rights on July 12, 1996. The petition alleged three statutory grounds for termination.[5] The hearing on the petition to terminate parental rights commenced September 25, 1996, and was continued on Septem-

---

[4] The requirement for a permanency planning hearing is triggered if a child remains in foster care and the parental rights have not been terminated within 364 days of the original petition.

[5] The alleged grounds included subsections 19b(3)(c)(i), 19b(3)(c)(ii) and 19b(3)(g):

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(ii) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\*　　\*　　\*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

ber 27, October 27 and November 20. The court determined at the outset that it would consider the alleged grounds and the best interest evidence separately.[6]

Petitioner presented one witness regarding the alleged grounds for termination, the family's case worker, who was examined and cross-examined by the parties. Respondent did not call any witnesses regarding the alleged grounds for termination. After hearing the case worker's testimony, the court found

---

[6] The children's guardian ad litem filed a motion to combine the "best interest phase with fact finding phase" of the termination hearing pursuant to MCR 5.973(A)(2). The respondent argued that MCR 5.974(E) required that the two "phases" be separately argued. We note that neither party cited the correct court rule, given the status of this case. The applicable court rule when, as here, the children have been in foster care in the temporary custody of the court is MCR 5.974(F).

The referee concluded on the facts of this case that "there really is not a provision . . . on the amended court rule for a best interest hearing." Despite this correct conclusion, the referee determined that it would first consider the alleged grounds to support termination and, if a ground was established, proceed to separate consideration of best interest testimony. The dissent incorrectly characterizes this decision as a procedural error that led the parties to wait to produce witnesses at the best interest hearing. The referee's conclusion regarding the scheduling of the proceeding, in fact, gave both parties the notice and opportunity to present witnesses on each issue. Electing to save witnesses for the best interest hearing is a tactical decision, as is the decision to present only one or zero witnesses regarding the grounds for termination. That only one witness was called with respect to the grounds for termination does not compel the conclusion that the evidence is "plainly insufficient" to support the court's findings as suggested by the dissent.

Under the court rule applicable in this case, MCR 5.974(F), there need not be a separate hearing regarding the grounds for termination and whether termination is clearly not in the child's best interest, because under (F)(2) the admissible evidence for both issues includes "all relevant and material evidence, including oral and written reports . . . *even though such evidence may not be admissible at trial.*" (Emphasis added.) In contrast, we note that under MCR 5.974(D) and (E) separate hearings are a practical necessity because evidence to support the grounds for termination must be legally admissible while the evidence regarding whether the termination is clearly not in the child's best interest is governed by (F)(2).

that petitioner had proven subsections 19b(3)(c)(i) and 19b(3)(g) by clear and convincing evidence. Following this conclusion, the court asked to hear testimony regarding the best interests of the children. Two days of testimony regarding the children's best interests followed. On November 20, 1996, the court concluded that the evidence had clearly and convincingly demonstrated that termination was in the children's best interests, and it entered an order terminating respondent's parental rights on December 2, 1996.

Respondent filed her claim of appeal on January 13, 1997. The Court of Appeals affirmed in a unpublished opinion per curiam on June 12, 1998 (Docket No. 200486). We granted leave to appeal. 459 Mich 1001 (1999).

II

Under MCL 712A.19b(3); MSA 27.3178(598.19b)(3), it is well established that the petitioner for the termination of parental rights bears the burden of proving at least one ground for termination. *In re Sours Minors*, 459 Mich 624; 593 NW2d 520 (1999). The question presented by this case is how to apply subsection 19b(5), which was enacted by 1994 PA 264. Subsection 19b(5) provides in pertinent part that the court "shall" terminate parental rights if one statutory ground for termination is found, "unless" termination is clearly not in the child's best interests.

Before the amendments to chapter XIIA of 1939 PA 288 enacted by 1994 PA 264, a court's decision to terminate parental rights was discretionary once the court found clear and convincing evidence that one or more statutory grounds for termination existed.

The prior statute did not expressly require consideration of the child's best interests.[7] The amendments to the law addressing the termination of parental rights enacted by 1994 PA 264 reflected ongoing concern that children were languishing indefinitely in the temporary custody of the court.[8] The statute, as amended by 1994 PA 264, requires that, if the court finds clear and convincing evidence that the petitioner has proven one or more grounds for termination,

> the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests. [MCL 712A.19b(5); MSA 27.3178(598.19b)(5).]

The amended court rule, MCR 5.974, similarly mandates termination once one or more grounds for termination is proven, unless "termination is clearly not in the best interest of the child."[9] MCR 5.974(E)(2).

---

[7] The corresponding court rule, however, required the court to further find that "termination is in the best interest of the child." MCR 5.974(E)(2), amended in 1995 in response to 1994 PA 264.

[8] Amendments made to the law by 1988 PA 223 through 225 were intended to address barriers that delayed the placement of children in permanent loving homes once those children entered the juvenile justice system. 1994 PA 264, which became effective January 1, 1995, addressed additional barriers.

[9] MCR 5.974 defines three procedures, depending on the particular circumstances of the termination proceeding. MCR 5.974(D) addresses terminations that occur at the initial disposition hearing, MCR 5.974(E) addresses terminations involving children already within the jurisdiction of the court and where termination is sought on the basis of one or more circumstances different from the offense that led the court to take jurisdiction over the children, and MCR 5.974(F) addresses the termination of parental rights over children that have been in foster care in the temporary custody of the court.

This Court has not directly addressed the operation of subsection 19b(5). The prevailing interpretation of subsection 19b(5) at the Court of Appeals is that the statute creates "a mandatory presumption that can only be rebutted by a showing that termination is clearly not in the child's best interest." *In re Hall-Smith*, 222 Mich App 470, 472; 564 NW2d 156 (1997). As to the best interest provision of 19b(5), *Hall-Smith* held:

> Although the burden of proof remains with the petitioner to show that a statutory ground for termination has been met by clear and convincing evidence, MCR 5.974(A)(3) and (F)(3), we believe that the burden of going forward with evidence that termination is clearly not in a child's best interest rests with the respondent. [*Id.*, pp 472-473.]

While we acknowledge *Hall-Smith*'s attempt to give meaning to the mandatory language of subsection 19b(5), we reject the notion that the best interest clause of subsection 19b(5) imposes a burden of production on the party opposing termination. Nor does the best interest provision of subsection 19b(5) impose any further burden of proof on the petitioner once the petitioner has carried its burden of establishing one or more grounds for termination.

Subsection 19b(5) unambiguously provides that once the petitioner proves at least one ground for termination by clear and convincing evidence, the court "shall order termination." Absent any further language, the statute would create a legally binding rule. However, reading subsection 19b(5) in its entirety, we conclude that subsection 19b(5) preserves to the court the opportunity to find that termination is "clearly not in the child's best interests" despite the

establishment of one or more grounds for termination.

We reject *Hall-Smith*'s characterization of subsection 19b(5) as creating a rebuttable presumption, because the plain language of subsection 19b(5) does not expressly assign any party the burden of producing best interest evidence. Although *Hall-Smith* and its progeny specifically require the parent to put forth some evidence that termination is clearly not in the child's best interest,[10] subsection 19b(5) does not specify that it is the parent who carries the burden of producing best interest evidence opposing termination. While we recognize that the party opposing the established grounds for termination will almost always be a parent, we hold that under subsection 19b(5), the court may consider evidence introduced by any party[11] when determining whether termination is clearly not in a child's best interest. Further, even where no best interest evidence is offered after a ground for termination has been established, we hold that subsection 19b(5) permits the court to find from evidence on the whole record that termination is clearly not in a child's best interests. Thus, we expressly reject the dicta of *In re Boursaw*, 239 Mich App 161, 180; 607 NW2d 408 (2000), that, "[i]f the parent does not put forth any evidence addressing the

---

[10] *Id.*, p 473; see also *In re Hamlet (After Remand)*, 225 Mich App 505; 571 NW2d 750 (1997), *In re Huisman*, 230 Mich App 372; 584 NW2d 349 (1998), *In re JS & SM*, 231 Mich App 92; 585 NW2d 326 (1998), *In re EP*, 234 Mich App 582; 595 NW2d 167 (1999), and *In re Boursaw*, 239 Mich App 161; 607 NW2d 408 (2000).

[11] MCR 5.903(A)(13)(b) defines "party" in a protective proceeding to include "petitioner, child, respondent parent, or other parent or guardian in a protective proceeding."

issue [of the child's best interests], termination is automatic."[12]

Subsection 19b(5) attempts to strike the difficult balance between the policy favoring the preservation of the family unit and that of protecting a child's right and need for security and permanency. While the operation of subsection 19b(5) imbues the court with some discretion, that discretion is significantly diminished from the prior law, which permitted the court to not terminate, even where at least one ground for termination was established. Once a ground for termination is established, the court must issue an order terminating parental rights unless there exists clear evidence, on the whole record, that termination is not in the child's best interests.

III

Respondent first contends that once a ground for termination has been established, the best interest clause of subsection 19b(5) violates due process because it imposes the "impossible" burden of proving a negative, i.e., that "termination . . . is clearly not in the child's best interests." We conclude that subsection 19b(5) is constitutional and that the subsection 19b(5)'s best interest provision, in fact, provides an opportunity for the court to find that termination is clearly not in the child's best interest, despite the establishment of one or more grounds for termination.

---

[12] We also reject *In re Boursaw*'s dicta that after a parent presents any best interest evidence the petitioner must "again meet its burden of proof with regard to the matter." *Id.* We reiterate, the petitioner carries its burden of proof, and need prove nothing more, once one or more grounds for termination is found.

Statutes must be construed in a constitutional manner if possible, and the burden of proving that a statute is unconstitutional is on the party challenging it. *Gora v City of Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998). In determining the constitutionality of the best interest provision of subsection 19b(5), a review of the procedural requirements once a petition to terminate parental rights is filed is helpful. A respondent must be afforded written notice of a hearing on the petition to terminate parental rights. MCL 712A.19b(2); MSA 27.3178(598.19b)(2). As we have stated, MCL 712A.19b(3); MSA 27.3178(598.19b)(3) requires that the petitioner prove by clear and convincing evidence at least one ground for termination. A respondent is afforded the opportunity to present evidence and witnesses at a hearing on the termination of parental rights and to confront and cross-examine evidence and witnesses used against the respondent. MCL 712A.19b(1); MSA 27.3178(598.19b)(1), see also MCR 5.974. The court must state its findings and conclusions on the record or in writing. MCL 712A.19b(1); MSA 27.3178(598.19b)(1).

Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under subsection 19b(3), the liberty interest of the parent no longer includes the right to custody and control of the children. See *In re LaFlure*, 48 Mich App 377, 387; 210 NW2d 482 (1973). *In re LaFlure, supra*, upheld the constitutionality of 1972 PA 59, subsection 19a(f), because the Court held that subsection 19a(f) required the petitioner to prove at least one ground for termination by clear and convincing evidence.

Similarly, once at least one ground for termination is proven under subsection 19b(3), we hold that the parent's interest in the companionship, care, and custody of the child gives way to the state's interest in the child's protection.

The best interest provision of subsection 19b(5) provides the court the opportunity to find that termination is clearly not in the child's best interest. The primary beneficiary of this opportunity is intended to be the child. Secondarily, the provision affords respondents additional protection by permitting the court to consider evidence, within the whole record, that termination is clearly not in a child's best interests. Again, the court must state its findings and conclusions regarding any best interest evidence on the record or in writing. MCL 712A.19b(1); MSA 27.3178(598.19b)(1).

Rather than imposing an impermissible burden on respondent, the best interest provision of subsection 19b(5) actually provides an opportunity to avoid termination, despite the establishment of one or more grounds for termination. Because this opportunity effectively serves respondent's interests, we reject respondent's argument that it violates her due process.

IV

Respondent argues that the probate court erred by terminating her parental rights. We review decisions terminating parental rights for clear error: "a decision must strike us as more than just maybe or probably wrong . . . ." *Sours, supra,* p 633 (citations omitted). We review for clear error both the court's decision

that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest.

Our review reveals that the probate court's conclusion that two grounds for termination had been established is supported by the record. Further, we conclude that the evidence did not establish that termination was clearly not in the children's best interests. We note that the court, in fact, went beyond the statutory best interest inquiry by concluding that termination was in the children's best interests. Subsection 19b(5) allows the court to find that termination is "clearly not in the child's best interests" despite the establishment of one or more grounds for termination. The statute does not require that the court affirmatively find that termination is in the child's best interest.

A

As to the grounds for termination, the probate court found that petitioner had proven by clear and convincing evidence that two of the three alleged grounds for termination existed.

The first ground found to be established was subsection 19b(3)(c)(i), which states:

> The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds [that] [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the condition will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i).]

As to this ground, the probate court found that, although the respondent had apparently overcome her ambivalence to the custody of her children that had in part led to the initial adjudication, she had never resolved the housing issue or produced a viable custodial plan for the care of her children.[13] The court noted that respondent had had five addresses since her children were placed in the temporary custody of the court and that none had been suitable. The court also found that respondent had failed to produce a custodial plan for the care of children, a condition that initially led respondent to leave one child with grandparents and the others with her ex-husband. Thus, the court concluded that subsection 19b(3)(c)(i) had been proven by clear and convincing evidence.

Our review of the record for clear error reveals that the respondent was given lists of low income housing by the caseworker. It appears respondent was required to obtain and maintain a two- or three-bedroom apartment from the testimony. Respondent may have obtained or nearly obtained potentially suitable housing on two occasions, but was unable to maintain those accommodations, allegedly for financial reasons. Further, the caseworker was unable to determine the suitability of the accommodations because of respondent's frequent moves.[14] The

---

[13] These tasks were among the requirements of the court's original order of disposition when the children were removed to foster care. See n 3.

[14] The parent-agency agreements obligated the caseworker to "monitor and assist parent in obtaining/maintaining suitable, safe housing for self and children by providing referrals for housing, furniture and household items, advocating for utilities, assessing home for cleanliness and providing guidance to improve housekeeping conditions."

respondent did not dispute that her living situations from the time the children were adjudicated temporary wards of the state through the date the petition to terminate her parental rights was filed were unsuitable for the children. As of the date of the court's findings regarding the grounds for termination, respondent was allegedly on the waiting list for a two-bedroom apartment, but had not in fact obtained a two-bedroom apartment. The record also reveals that the respondent did not produce a custodial plan for the care of her children from the time she first contacted the Department of Social Services in the spring of 1995 through to the initial days of the termination hearing in September 1996.

On the evidence presented, we cannot conclude that the court clearly erred by finding that the respondent's inability to obtain and maintain housing and her failure to offer a viable custodial plan were conditions that led to the adjudication, and were conditions that continued to exist as of September 27, 1996.[15] The dissent's assertion that the court lacked information regarding the suitability of respondent's living situation as of that date is incorrect. The undisputed testimony revealed that respondent acknowledged her current housing situation was unsuitable. Further, given respondent's inability to maintain housing and her frequent moves, we can find no error in the court's finding that there appeared no reasonable likelihood that these conditions would be rectified within

[15] As will be discussed below, the respondent did present a plan for the reunification of her children during the termination hearing on October 27, 1996. However, this information was based on events that had not occurred at the time the court found the grounds for termination established on September 27, 1996.

a reasonable time considering the children's ages. More than a year had passed since the children had become temporary wards of the state. That respondent held merely a place on a waiting list for a two-bedroom apartment on the date of the termination hearing reinforces the conclusion that her living conditions would not likely be rectified within a reasonable time considering the age of the children.

Given our conclusion that subsection 19b(3)(c)(i) was established by clear and convincing evidence, it is technically unnecessary to address the second ground for termination alleged in the petition because the petitioner need only establish one ground for termination under subsection 19b(3)(g). However, because our review of this allegation may provide a more complete understanding of this case, we offer the following analysis. The second ground found to be established was subsection 19b(3)(g):

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g).]

To support this ground, the petition for termination alleged that respondent had not sufficiently complied with court-ordered requirements in the parent-agency agreements.[16] Of the eight parent-agency agreement requirements with which respondent allegedly failed

---

[16] Because the court had ordered that respondent comply with the requirements of the parent-agency agreements in the July 14, 1995, dispositional order, the dissent's argument that subsection 19b(3)(g) does not require compliance with the parent-agency agreement misses the point. The parent-agency agreements in this case were part of the court order,

to comply, the court found clear and convincing evidence to support two. The first requirement again involved respondent's failure to obtain and maintain appropriate housing for three consecutive months discussed above. The second involved respondent's failure to demonstrate progress toward the provision of proper care and custody for the children. In this regard, the court focused on respondent's failure to follow through with and progress in the required individual therapy. In light of respondent's failure to meet these two requirements, the court concluded that there was clear and convincing evidence to support subsection 19b(3)(g).[17]

and respondent's failure to comply with those requirements was indicative of neglect. See n 3.

[17] In an effort to discredit the court's conclusion, the dissent attempts to make it appear that the court leapt straight from a purportedly "vague explanation" of its conclusions regarding respondent's difficulty with therapy to a discussion of the father's lack of housing. To clarify the court's rationale, we offer the following quotation of the court's analysis and conclusion on the therapy issue:

There has been some effort on the part of the mother to follow through with therapy, although she did stop originally and that may have been a result of confusion on her part or part of her psychological distress in not being able to connect with the therapist.

It also may have been may have been a result of her ambivalence, which was very clear in the beginning, and in fact, not even ambivalence. In the very beginning she clearly indicated that she did not want the children back.

So it's not clear why exactly the therapy was so slow to start. Part of it, of course, was the bureaucratic requirement that was made reference to that slowed this down, but once it started, the mother stopped therapy extensibly [sic] because she didn't like the therapist. The exact reason, perhaps, is less important than the fact that it stopped, it slowed down for a while and that delayed this situation.

The end result, however, is that even after a year, even discounting any intent on the mother's part, there has not been a provision of proper care or custody for these children at ages five, three and one and a half, a little bit older than that now, but at young ages, because of the lack of progress here, that this Court is not satisfied

Our review of the record for clear error reveals that some delay in respondent's progress in individual therapy may well have been attributable to bureaucratic delays in the referral process. The record nonetheless reflects that respondent quit her first referral because she did not like the counselor. While in certain circumstances, the failure to attend further sessions with a counselor may be excusable, it appears clear in this case that it was the process of counseling, as much as the personality of the counselor, that respondent found difficult. Respondent had attended ten sessions with her second counselor, but had simply failed to attend six sessions and canceled one. The excuse on the record for her sporadic attendance with the second counselor was that counseling proved too depressing, and on a few of those occasions, she could not get transportation. Further, the second therapist testified that she had to reinitiate contact with respondent after missed sessions, because respondent did not attempt to reschedule appointments on her own.[18] We agree that the evidence of respondent's inability to obtain and maintain suitable housing supports the court's conclusion that respondent, without regard to her intent, had failed to provide proper care or custody of her children as

---

that there is a reasonable expectation that Miss Trejo will be able to provide care and custody within the foreseeable future.

[18] We note that while the court had before it and understood the substance of respondent's lack of progress while in counseling at the hearing regarding the grounds for termination, see n 17, the specifics of respondent's sporadic attendance cited here are derived from the testimony of the second counselor regarding respondent's progress in counseling between May 1996 and September 1996. This testimony was presented *after* the court had already concluded that the grounds were established by clear and convincing evidence.

alleged under subsection 19b(3)(g). Further, we conclude that the court did not clearly err by finding that the evidence of respondent's slow progress in counseling established the alleged ground for termination under subsection 19b(3)(g).

B

Respondent presented best interest evidence following the court's conclusion that two statutory grounds were supported by clear and convincing evidence. Respondent testified that she would be moving into an appropriate two bedroom apartment on October 26, 1996, the day following the first day of testimony regarding whether termination was clearly not in the children's best interests. She had remarried on October 3, 1996, to a man she had been seeing since mid-1995, approximately the time the children were made temporary wards of the court, and whom she had been seriously considering marrying since February 1996. She testified that she would be able to handle having the children back within three months and that she planned to gradually introduce them to her new husband over the following three months before moving the children into his three bedroom home. Respondent also presented testimony of friends regarding their observations of her parenting before and after the children were made temporary wards of the court.

While the court acknowledged that respondent had shown progress since the petition to terminate her parental rights had been filed in July 1996, the court questioned her ability to successfully execute her reunification plan, given her history of false starts and resistance to outside guidance. The court was trou-

bled by respondent's failure to share information regarding her relationship with her new husband with caseworkers and noted the seeming impulsiveness of her recent marriage. There was serious question whether respondent's plans "would just add to the chaos and the confusion" the children were exhibiting after over a year in temporary foster care. The court concluded that to place the children with their mother, only to remove them again, would be devastating for the children and that there was "clear and convincing evidence" that termination was in the children's best interests.[19]

On our review of the entire record, we cannot conclude that the court's assessment of the children's best interests was clearly erroneous. The evidence that respondent may have acquired an apartment in October 1996 suitable for the children, during the pendency of the permanent custody hearing, does not clearly overwhelm the respondent's failure over the year the children had been in the court's temporary custody to obtain or maintain suitable housing. The court did not clearly err by refusing to further delay permanency for the children, given the uncertain potential for success and extended duration of respondent's reunification plan.

V

We hold that subsection 19b(5) mandates termination once a petitioner establishes at least one statu-

---

[19] We reiterate, the court went beyond the statutory best interest inquiry by concluding that termination was in the children's best interests. The statute does not require that the court affirmatively find that termination is in the child's best interest. *Ante* at 357.

tory ground for termination under subsection 19b(3), unless the court finds that termination is clearly not in the child's best interest. This interpretation of subsection 19b(5) imposes no additional burden of production upon a respondent-parent and is constitutional.

In this case, the court's finding that two statutory grounds for termination were established by clear and convincing evidence was not clearly erroneous. Nor was the court's finding regarding the children's best interests clearly erroneous. For these reasons, the termination of respondent's parental rights is affirmed.

KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with WEAVER, C.J.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur in parts I-III of the majority opinion. However, I disagree that the probate court did not clearly err in finding that petitioner had proven statutory grounds for termination by clear and convincing evidence.

FACTS

Defense counsel said it best when he described the situation presented wherein respondent "got on a train and she was never able to get off." After her divorce, respondent found herself financially and emotionally unable to care for her children. After seeking help from family and her former husband, who were unable or unwilling to assist, respondent turned to the Department of Social Services. From there, she was required to take steps toward reuniting with her children. As the probate court points out,

she complied with most of these steps. She completed parenting classes, attended counseling, maintained employment, attended all court hearings, and participated in psychological evaluations. Strikes against her include missed counseling appointments, failure to maintain adequate housing, failure to discipline the children during visits, and failure to present a plan for reunification. Notably missing from this list is any form of abuse—physical or emotional. Also absent are facts showing neglect or substance abuse. Upon review of the facts stressed by the probate court, it appears that respondent's financial hurdle was the most difficult to overcome. The consequences of this fact, coupled with an erroneous application of the applicable statutes, are what ultimately led to termination.

ERRONEOUS PROCEDURE

As the majority notes, there was confusion about how to proceed with the termination and best interests hearings. The probate court determined in advance that it would proceed with the termination hearing and later separately consider the best interests evidence. I agree that the probate court understandably relied on the erroneous statutory interpretation provided in *In re Hall-Smith*, 222 Mich App 470; 564 NW2d 156 (1997).

As explained by the majority, that case placed a rebuttable presumption on the respondent to go forward with evidence that termination is clearly not in the child's best interests. This procedure may have led both parties to wait to produce evidence until the

best interests hearing.[1] This would explain the petitioner's decision to provide only one witness in support of its petition to terminate parental rights, and would explain the respondent's failure to produce any witnesses or evidence at the termination stage. At the best interests hearing, however, both parties produced several witnesses in attempts to persuade the court.

This error is significant in that the court must find, at the termination stage, *clear and convincing evidence* that the statutory grounds for termination have been proven *by the petitioner.* We determined today that the best interests determination merely provides the court with an opportunity to find that termination is *clearly not* in the child's best interests. *Ante* at 352. In this context, review of the probate court's determination to terminate should be based only on facts relied upon by the court in finding that statutory grounds for termination were proven. I would hold that the facts provided by the single witness' testimony were plainly insufficient and, thus, the court's findings were clearly erroneous. Although this error might have been prevented by considering all evidence produced by both parties, the court, in ruling that it would hear best interest evidence at a later time, relied on insufficient evidence.

---

[1] The majority describes this as a tactical choice. I agree, but, the choice was made on the basis of an erroneous view by the lower courts that the respondent had a burden of proof at the best interests hearing. The court clearly erred in finding clear and convincing evidence on the basis of the testimony of one caseworker who was not sure where respondent lived and had not investigated whether respondent's housing problem was being resolved. Further, she was not sure whether any caseworker had provided respondent with housing referrals or assistance as required by the parent-agency agreement. .

I

Our Legislature has provided a statutory list of
grounds for termination. The probate court held that
petitioner had proven MCL 712A.19b(3)(c)(i) and (g);
MSA 27.3178(598.19b)(3)(c)(i)  and (g), by clear and
convincing evidence. MCL 712A.19b(3)(c)(i);   MSA
27.3178(598.19b)(3)(c)(i)  provides:

> The parent was a respondent in a proceeding brought
> under this chapter, 182 or more days have elapsed since the
> issuance of an initial dispositional order, and the court, by
> clear and convincing evidence, finds either of the following:
> (i) The conditions that led to the adjudication continue
> to exist and there is no reasonable likelihood that the con-
> ditions will be rectified within a reasonable time consider-
> ing the child's age.

In order to make its determination under this sub-
section, the court heard testimony of the family case
worker, Kelly Parkinson. The court found that there
were only two conditions that led to the original adju-
dication,   and   "they   involved   housing   and   they
involved [the] mother's choice or her desire as to
whether or not she wanted the children in her cus-
tody." On the basis of Ms. Parkinson's testimony, the
court found that respondent had five addresses,
therefore one of the two conditions continued to
exist. The court also found that because respondent
had been fairly compliant with much of the parent-
agency agreement, it was convinced that the second
condition no longer existed.[2]

---

[2] The court also found that respondent failed to present a custodial
plan. However, this may not be considered under this subsection because
it was not a condition that led to the initial adjudication.

Ms. Parkinson provided the only testimony regarding respondent's housing situation. The testimony reveals that there was scant support for the ultimate findings made by the court on this issue. On direct examination, Ms. Parkinson testified that she thought a list of housing options had been given to respondent and that she was seeking housing. She testified that respondent was living with a friend and then moved into a house that respondent reported was suitable for the children. Ms. Parkinson testified that she was going to make a visit, but that respondent moved before that happened. When asked the number of different addresses respondent had provided, Ms. Parkinson responded:

> *A.* Several. I would say at least five different addresses.
>
> *Q.* Did she ever give you any excuses why she couldn't come up with a suitable housing arrangement?
>
> *A.* Never a viable excuse. I would assume it was financial.

This was the extent of the direct examination on the housing issue. On cross-examination she was not clear, and did not know, whether respondent had been given housing referrals. Ms. Parkinson was asked to verify the length of time respondent had been at her current address, and Ms. Parkinson was again "unclear." She had never visited the current apartment and had not determined whether it was appropriate. She did not know whether respondent was on a waiting list for a two-bedroom apartment, and had not verified any information regarding respondent's living arrangements or plans.

At the conclusion of direct and cross-examination, the court examined the witness. Interestingly, in over

twenty-four pages of examination, the court never once inquired into the housing issue. The court's conclusory findings on this issue are demonstrative of the short shrift given to this issue:

> As to the housing issue, in this Court's opinion, that still is not resolved . . . . Now, she has not been able to do that in the approximately one-year's time between the placement of the children and the filing of this Petition, and in fact, the testimony has been that she has had five addresses during that time and none of those addresses were suitable for the care of the children.[3] [T]his Court is satisfied that there is clear and convincing evidence to support 19b(c)(i); that that condition leading to that original adjudication continues to exist.

The court was required to determine whether the conditions that led to the initial order continued to exist, and that there was no *reasonable likelihood that conditions would be rectified within a reasonable time considering the age of the children*. Without information regarding suitability of respondent's current housing situation, or respondent's plan for housing, the court was not provided with clear and convincing evidence that the housing conditions were unsuitable and, if so, would not be rectified within a reasonable time. The majority describes Ms. Parkinson's testimony as "undisputed" and revealing that respondent acknowledged her housing was unsuitable. It also provides that respondent was merely on a waiting list for a two-bedroom house on the date of termination. The majority relies on Ms. Parkinson's statement that respondent "indicated" that the apart-

---

[3] There is no support in the record for the conclusion that "none" of the addresses were suitable. It appears that Ms. Parkinson relied on respondent's claim that one was unsuitable, but had not visited the others.

ment was unsuitable for all three children. Ms. Parkinson did not say when this was "indicated" or to whom. A full reading provides that Ms. Parkinson was unsure of respondent's housing situation on the day of the termination hearing. She had not verified her current address or situation. Moreover, the majority is relying on respondent's attorney's cross-examination question of Ms. Parkinson as evidence that respondent "held merely a place on a waiting list for a two-bedroom apartment on the date of the termination . . . ." *Ante* at 360. Reliance on an attorney's questions of a witness as evidence reflects the meager support in the record. What is clear is that the court had insufficient evidence regarding respondent's current and prospective housing situation at this stage of the proceedings.

II

While rejecting grounds argued by petitioner based on the behavior of the children, the court agreed that a second statutory ground for termination had been proven. MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) provides:

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

To prove this ground, petitioner provided the parent-agency agreement listing eight requirements and argued that respondent had not complied. The court found, however, that respondent had failed to comply with only two of the eight. First, the court reiterated

that housing was inadequate "despite the statement
that the mother has recently obtained housing, that
she is renting from a friend."[4] Second, the court
reviewed respondent's therapy progress and con-
cluded that the result was that there has not been a
provision of proper care or custody because of the
lack of progress here. This vague explanation makes
it difficult to discern whether the court was referring
to housing, a formal "plan," or that slow progress in
therapy caused her to be unable to provide proper
care. The court's statement immediately following the
conclusion regarding respondent referred to the
father's lack of appropriate housing. The majority
resorted to reviewing testimony provided at a later
hearing to conclude that the court did not clearly err
in this conclusion. *Ante* at 360, n 16. Even if I were to
accept the fact that respondent's therapy progress
was slow, this is but one of eight goals listed in the
parent-agency agreement. Subsection 19b(3)(g) does
not require that every goal listed in the parent-agency
agreement be complied with in order to spare the par-
ent from termination of rights. In fact, no reference is
made in the statute regarding these agreements.
Instead, as explained by the majority, the parent-
agency agreement is a service plan that provides guid-
ance to the agency, the parent, and the court. It pro-
vides both services to be provided, and expectations
of the parent. *Ante* at 346, n 3. It is not a list of bind-
ing requirements that necessarily leads to termination
under subsection 19b(3)(g), if there is noncompliance

---

[4] Apparently, the court was referring to the June 12 hearing where
respondent provided proof to the court that she was renting a two-
bedroom apartment. The court explained that she brought her landlord to
that hearing.

with one or two.[5] Because the housing goal lacks evidence to support respondent's violation, and because the therapy issue is extremely vague, I would hold that the court clearly erred in finding clear and convincing evidence that grounds under subsection 19b(3)(g) were proven.

CONCLUSION

These cases are especially difficult and fact specific. As recognized by the majority, appellate courts must adhere to a high standard of review, that of clear error, and must have a definite and firm conviction that a mistake has occurred before overturning a probate court's determination. This Court has reviewed countless cases detailing reprehensible acts committed by parents against their children. Almost every case involves some sort of physical, and often sexual, abuse accompanied by neglect and substance abuse. The sad stories reviewed by judges, attorneys, and caseworkers can lead to a cynical view of our ability to repair these familial relationships. Such facts are not present in the instant case. Instead, the facts show that respondent had a difficult time recovering from the emotional and financial effects of her divorce.

We must keep in mind that the "fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or

---

[5] As the majority notes, "substantial[] compl[iance]" is the test, under the court rule, not the statute, for determining whether there is evidence that there is a risk of harm in returning the child to the parent. *Ante* at 346, n 3. Here, respondent substantially complied with the parent-agency agreement by completing at least six of the eight requirements.

have lost temporary custody of their child[ren] to the State." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). With this in mind, it is of utmost importance that probate courts follow the statutorily imposed guidelines in determining whether the grounds for termination have been met by clear and convincing evidence. In this case, it appears that the probate court, in its original adjudication, failed to do so. For the reasons set forth, I would reverse the termination of parental rights.

Markman, J., took no part in the decision of this case.