# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. T. Milliken, Minor.

UNPUBLISHED
March 12, 2015

No. 322829; 322830
Van Buren Circuit Court
Family Division
LC No. 12-017509-NA

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Respondents appeal by right an order of the trial court terminating their parental rights to the minor child pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody) and (j) (reasonable likelihood of harm if child returned to parent's care). Because the trial court did not clearly err by terminating respondents' parental rights, we affirm.

Both respondents in this case have an established history of substance abuse and related criminal activity. Notably, in 2011, respondents were arrested for operating and maintaining a methamphetamine laboratory. While both respondents were on probation relating to that offense, mother gave birth to the minor child, JTM, on October 2, 2012. At that time, mother tested positive for controlled substances and JTM tested positive for opiates. Around the same time, father tested positive for methamphetamine. By order of the court, JTM was removed from respondents' care while still in the hospital and placed with mother's relatives. Respondents were adjudicated in November of 2012 and offered numerous services aimed at reunification. Despite these proffered services, respondents failed to comply with their case service plan, they frequently missed parenting time with JTM, they continued to abuse illegal substances, they repeatedly violated their probation, and they were in and out of jail. Ultimately, the trial court terminated respondents' parental rights under MCL 712A.19b(3)(g) and (j). Respondents now appeal as of right.

On appeal, respondents first argue that the trial court erred in finding statutory grounds for terminating their parental rights. Mother, in particular, argues that the trial court gave insufficient weight to her recent progress, including compliance with services during her most recent incarceration. Father asserts that termination of his parental rights was inappropriate because he did not have a meaningful opportunity to participate in services while incarcerated. He also contends that the trial court impermissibly terminated his parental rights merely because he was incarcerated when in fact, according to father, JTM's placement with a relative demonstrates that he is able to provide care and custody while incarcerated.

-1-

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).[1] We review for clear error a trial court's determination that a statutory ground has been proven by clear and convincing evidence. *Id.*; MCR 3.977(K). A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

In this case, the trial court did not clearly err in finding that a ground for termination of both parents' rights existed under MCL 712A.19b(3)(g). That statute provides that a trial court may terminate parental rights to a child if the "parent, without regard to intent, fails to provide proper care and custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." For purposes of this provision, a parent's failure to comply with a parent-agency agreement may be indicative of a parent's inability to provide proper care and custody for the child. See *In re Trejo*, 462 Mich 341, 360-363 & n 16; 612 NW2d 407 (2000). An inability to provide care and custody might also be demonstrated, for example, by a continuation of the conditions prompting adjudication, lack of housing and employment, as well as evidence of a longstanding drug addiction and a persistent failure to address this addiction. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Turning to the present facts, as noted, respondents were arrested in 2011 for operating or maintaining a methamphetamine laboratory. JTM was born on October 2, 2012, while respondents were on probation relating to this offense, at which time mother tested positive for controlled substances, in violation of her probation. Likewise, at the time of JTM's birth, father had also recently tested positive for methamphetamines, in violation of his probation. Furthermore, JTM also tested positive for opiates. As a result, both respondents were incarcerated for probation violations. While still in the hospital, JTM was removed from respondent's care and placed with mother's relatives. JTM has never lived with respondents, and had been living with mother's relatives for over 20 months at the time of the termination hearing.

During the time that services were offered, mother was incarcerated for all but approximately five of the 20 months this case was pending. Mother's time in jail resulted from repeated violations of her probation, most often involving issues with controlled substances.

---

[1] JTM is a member of the Pokagon Band of Potawatomi Indians. Because an Indian child is involved, before terminating parental rights, the trial court was also required to find (1) that "active efforts" were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful, and (2) that the evidence, including testimony from a qualified expert witness, established beyond a reasonable doubt that the continued custody of the child by the parents would likely result in serious emotional or physical damage to the child. See 25 USC 1912(d), (f); MCR 3.977(G)(1), (2). Neither respondent raises a challenge with respect to these requirements and, upon review of the record, we find no error in the trial court's findings that these requirements have been satisfied.

Specifically, as noted above, mother was incarcerated in October of 2012 after she tested positive for controlled substances at the time of JTM's birth, in violation of her probation. Mother was next incarcerated between December 5, 2012 and December 18, 2012, after she again tested positive for controlled substances, in violation of her probation. Mother was incarcerated again between January 9, 2013 and May 5, 2013, after it was discovered that she was attempting to deliver illegal narcotics to father while he was incarcerated and after she failed to submit to a random drug screen. Mother was incarcerated again from July 26, 2013 to June 3, 2014 for an arrest for retail fraud and violation of her probation. These repeated probation violations and drug related infractions demonstrated a disregard of the trial court's orders which required mother to comply with the terms of her probation, to submit to drug screens, and to remain drug free, all of which mother failed to accomplish.

Moreover, during the time mother was not incarcerated, she had minimal contact with DHS and she failed to participate in any services, such as substance abuse counseling or parenting education. She missed numerous parenting time visits with JTM and attended no parenting time visits after her May 2013 release from jail. In fact, at the time of the termination hearing, mother had not seen JTM in 17 months. Moreover, there is no record evidence that mother obtained employment or that she maintained stable housing. Overall, given mother's repeated failure to comply with services, her numerous missed visits with JTM, her continued struggle with substance abuse, and her failure to address basic necessities such as housing, the trial court did not clearly err in determining that mother could not provide proper care and custody for JTM. Given JTM's age and the fact that JTM had spent the entire 20 months of her life with relatives, the trial court also did not clearly err in concluding that there was not a reasonable likelihood mother would be able to provide proper care and custody in a reasonable time. Consequently, termination of mother's parental rights was appropriate under MCL 712A.19b(3)(g).

On appeal, in arguing that termination under MCL 712.19b(3)(g) was improper, mother asserts that the trial court impermissibly speculated regarding her future ability to provide for JTM and, in particular, gave insufficient weight to the fact that she did not test positive for controlled substances after January 2013 and that she successfully completed some services during her last term of incarceration. The lack of positive drug tests carries little weight given that mother failed to submit to any DHS drug screens between January and May 2013, and was thereafter incarcerated for the majority of the remainder of the proceedings. With respect to mother's recent participation in services, the trial court acknowledged that mother completed some services in jail, but the trial court nonetheless found that termination was proper. We see nothing clearly erroneous in these findings given that the services highlighted by mother did not address her substance abuse problem and that, despite numerous opportunities, mother had not demonstrated an ability to comply in any way with services outside of the structured environment provided by jail. Given her repeated failures to comply with services for the majority of the time this case was pending before the trial court, mother's belated efforts while in jail, though commendable, simply were too little, too late. Cf. *In re Williams*, 286 Mich App at 272. Overall, contrary to mother's arguments, the trial court's findings were firmly based on the evidence presented and we cannot conclude that the trial court's decision was clearly erroneous.

Regarding father's ability to provide care and custody for JTM, similar to mother, father was incarcerated for all but approximately four of the 20 months this case was pending. In

addition to the jail time father served close in time to the child's birth for failing a drug test, father was incarcerated between November 20, 2012 and June 17, 2013, after he submitted a positive drug screen, in violation of his probation. Father was again incarcerated in mid-September, 2013, after he once again failed a drug test. On the latter occasion, father was sentenced to 36 months' to 20 years' imprisonment, and was still in prison at the time the termination hearing was held, with an earliest release date of September 2015. Like mother's repeated probation violations and incarcerations, father's probation violations and drug related infractions demonstrated a disregard of his parent-agency treatment plan which required him to comply with the terms of his probation, to submit to drug screens, and to remain drug free, all of which father failed to accomplish, thereby demonstrating an inability to provide proper care and custody for JTM. See *In re Trejo*, 462 Mich at 360-363 & n 16.

Furthermore, between June 17, 2013, when father was released from jail, and mid-September 2013, when he was re-incarcerated, father's overall progress was poor. Father obtained employment, but it was sporadic. Moreover, father participated in some parenting time visits, but his attendance was inconsistent. There is no evidence that father participated in any other services during this time period, such as a substance abuse assessment or parenting education. In fact, father missed his scheduled substance abuse assessment on September 12, 2013. Moreover, there is no record evidence that father obtained stable housing. Given the above evidence, the trial court did not clearly err in finding that father failed to provide proper care and custody for JTM. Likewise, given father's history of drug abuse, his failure to address that issue in any meaningful way during the proceedings, and his failure to participate in other services or to address barriers to reunification during the proceedings, the trial court did not clearly err in finding no reasonable expectation that father would be able to provide proper care and custody within a reasonable time considering JTM's age. Consequently, termination of father's parental rights was proper under MCL 712A.19b(3)(g).

In opposition to this conclusion, father asserts on appeal that termination was improper because he was not afforded a sufficient opportunity to participate in the DHS service plan. Father's analysis in this respect mirrors the analysis set forth in *In re Mason*, 486 Mich 142, 156-157; 782 NW2d 747 (2010), in which our Supreme Court provided an overview of DHS and the trial court's statutory duties to involve an incarcerated respondent during a child protective proceeding. However, the facts in *In re Mason* are distinguishable from the facts in this case and father is not entitled to relief on this basis.

Specifically, in *In re Mason*, 486 Mich at 156-160, our Supreme Court held that DHS and the trial court violated their statutory duties to ensure the respondent's participation in the service plan by failing to send the respondent a copy of the service plan, failing to procure the respondent's signature on the plan, failing to make contact with the prison social workers to see if the prison could help the incarcerated respondent fulfill some of the service plan requirements, and failing to update or even contact the respondent about the case. Here, however, father does not argue—and the record does not support—that he was not involved with the proceedings. To the contrary, the record discloses that father was present for every hearing, was in contact with the caseworker regularly, and was provided a copy of and signed the initial case service plan. Moreover, the record discloses that while father was incarcerated, the caseworker was in contact with MDOC in an attempt to facilitate prison services. Thus, it is clear that DHS adhered to its statutory duties to involve father, kept him apprised of the proceedings, and sought services on

his behalf while he was incarcerated. Any barrier to services while father was incarcerated was not the result of a failure by DHS or the trial court.

Father also argues that the trial court improperly terminated his parental rights merely because he was incarcerated. This argument lacks merit. It is true, as defendant argues on appeal, that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich at 160. However, in its written termination order, the trial court expressly indicated that its decision to terminate father's parental rights was *not* based solely on the fact that father was incarcerated, but rather on the fact that father had failed to make JTM a priority in his life, as evidenced by father's repeated probation violations, continued drug use, and overall failure to abide by his case service plan. Indeed, as detailed above, even when not incarcerated, father failed to comply with and benefit from services. There was, in short, no indication that he could provide JTM with proper care and custody, and it was on this basis, not his incarceration, that father's parental rights were terminated. Given the above evidence, we cannot conclude that the trial court's conclusions in this regard were clearly erroneous.

Finally, relying once more on *In re Mason*, father argues that his parental rights could not be terminated under MCL 712A.19b(3)(g) where he voluntarily placed the child with a relative caregiver. We disagree. In *In re Mason*, 486 Mich at 163-164, the respondent's children were voluntarily placed with the respondent's family while he was incarcerated, which made it "unnecessary for [him] to make ongoing arrangements with the relatives that would permit him to preserve his rights and remain in contact with [the children]." Our Supreme Court held that, by failing to consider the placement with the respondent's relatives, the trial court failed to properly consider whether the respondent could "fulfill his duty to provide proper care and custody in the future by voluntarily granting legal custody to his relatives during his remaining term of incarceration." *Id.* at 163. Unlike in *Mason*, in this case, the trial court specifically addressed JTM's placement with relatives in making its best-interest determination as discussed *infra*. Cf. *id.* at 164. Moreover, the circumstances in this case are not comparable to those in *In re Mason*. Here, the child was placed with mother's relatives, not father's, and there is no indication that father did anything to facilitate that placement or that he would have voluntarily chosen to place JTM in the care of mother's relatives while incarcerated. Cf. *id.* at 163-164. Instead, JTM was involuntarily removed from respondents' care because she tested positive for opiates at birth and because respondents had a history of drug abuse. Finally, the record discloses that mother's relatives were in favor of adoption, thus making it apparent that they were not interested in "preserv[ing]" father's rights while he remained incarcerated. See *id.* at 164. In short, JTM's placement with mother's cousins does not render clearly erroneous the trial court's conclusion that father failed to provide proper care and custody and that there is no reasonable expectation that he would be able to do so within a reasonable time considering JTM's age.

Because the trial court did not clearly err in terminating respondents' parental rights under MCL 712A.19b(3)(g), we need not consider the additional ground on which termination was based. *In re HRC*, 286 Mich App at 461. Nevertheless, we note briefly that we see no clear error in the trial court's finding that termination was warranted under MCL 712A.19b(3)(j). Namely, the same evidence demonstrating that mother and father would not be able to provide

proper care and custody within a reasonable time supported the conclusion that returning the child to respondents' care would result in harm to JTM.

Next, on appeal, father in particular also challenges the trial court's determination that termination was in JTM's best interests. Specifically, father maintains that he will soon be released on parole and that he is desirous of obtaining custody of JTM upon his release. Although acknowledging a lack of participation in his case service plan, father argues he cannot be faulted for this failure because the Clinton County Jail did not have services to address his substance abuse issues. Father also contends that he is bonded with JTM, and he further emphasizes that JTM is in placement with a relative with whom father asserts he has "a good working relationship."

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to it in determining the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Factors relevant to a determination of the child's best interests include: the child's bond to the parent, the parent's compliance with his or her case service plan, the parent's history of visitation with the child, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the possibility of adoption. *Id.* at 713-714. We review the trial court's best interests determination for clear error. *Id.* at 713.

In this case, the trial court did not clearly err in determining that a preponderance of the evidence supported the conclusion that termination was in JTM's best interests. At the time of the trial court's June 30, 2014 written order, the child was approximately 20 months old and had spent her entire life with a relative foster care family. Thus, as the trial court recognized, there was a need for finality. At the time of termination, father was incarcerated, and was not set to be released for another 15 months. Father had failed to participate in the service plan even when he was not incarcerated, and failed to address his barriers to reunification, including his substance abuse issues, in any meaningful way. He was also inconsistent with his parenting time visits and clearly did not make the child a priority in his life. Given father's overall lack of participation, his current incarceration, and the additional time father would certainly need after being released from prison to address his deficiencies, it was unlikely that the child could be returned to his care in the foreseeable future, if at all. Moreover, JTM had never resided with father, and the trial court indicated that JTM had at most a "slight bond" with father at one time which had since faded given that father had not seen JTM in 10 months at the time of the termination hearing. JTM clearly required a permanent, safe, and stable home, which father was incapable of providing, while in contrast the foster home, where JTM was "thriving," had expressed an interest in adopting JTM. While placement with a relative weighs against termination, *In re Olive/Metts Minors*, 297 Mich App at 43, the trial court expressly addressed JTM's placement with relatives and concluded that in this case, given the possibility of adoption and that JTM had resided with these relatives her entire life, JTM's best interests, and particularly her need for finality and stability, were best served by termination. Overall, on the basis of the evidence

-6-

presented, the trial court did not clearly err by determining that termination of father's parental rights was in the child's best interests.

Mother does not challenge the trial court's best interest determination on appeal. Nevertheless, on this record, we note that the trial court did not clearly err in finding that termination of her parental rights was also in the best interests of the child.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra