# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W. N. JOHNSON, Minor.

UNPUBLISHED
March 5, 2015

No. 320222
Wayne Circuit Court
Family Division
LC No. 10-496636-NA

Before: GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

## AFTER REMAND

On August 21, 2014, we vacated the circuit court's termination of respondent-mother's parental rights after determining that respondent was denied her right to counsel in the prior appeal brought by the child's guardian ad litem (LGAL). *In re Johnson*, unpublished opinion per curiam of the Court of Appeals, issued August 21, 2014 (Docket No. 320222) (*Johnson II*). By order of October 27, 2014, we retained jurisdiction to consider the propriety of the circuit court's ultimate resolution. *In re Johnson*, unpublished order of the Court of Appeals, entered October 27, 2014 (Docket No. 320222). With the assistance of appointed counsel, respondent has now fought the Department of Human Services (DHS's) allegations that termination of her parental rights is in the best interests of her minor child, WNJ. The circuit court terminated respondent's rights on December 1, 2014, based on the lack of a parent-child bond and respondent's continued failure to secure a legal source of income and suitable housing. We affirm.

## I. RELEVANT PROCEEDINGS

Respondent has a long history with Child Protective Services (CPS) and the DHS. In April 2007, the CPS substantiated a medical neglect claim raised against respondent in connection with the death of her eldest child. Since that time, the agencies have provided services to respondent for extended periods. These included substance abuse treatment and counseling, domestic violence counseling, individual counseling and anger management, educational services, housing and employment assistance, psychological and psychiatric evaluations, and parenting classes. Despite these services, respondent lost custody of her second child to the child's father, and the court terminated her rights to her third child while she was pregnant with WNJ.

CPS removed WNJ from respondent's care when the child was four months old after discovering that the family house was unsafe and unsuitable for habitation. The DHS then

-1-

provided respondent with another round of services including parenting classes and counseling. The circuit court declined to immediately terminate respondent's parental rights and gave her the opportunity to benefit from services. This Court reversed that decision and ordered the termination of respondent's rights, *In re Johnson*, unpublished opinion per curiam of the Court of Appeals, issued November 14, 2013 (Docket No. 316211) (*Johnson I*), but it was later discovered that respondent lacked counsel during the appellate process. As a result of this error, respondent lost visitation rights and the benefit of services for 10 months. Supervised visitation was reinstated upon this Court's opinion in *Johnson II*.

As ordered by this Court, the circuit court conducted a continued best-interest hearing on remand and accepted updated evidence to augment its decision-making process. The foster care worker testified that respondent's supervised parenting time sessions with WNJ were restarted in early October 2014. Respondent visited with WNJ for 1-1/2 hours twice each week, missing only two visits while suffering from strep throat. The foster care worker and WNJ's infant mental health therapist attended one visit each week and provided guidance to respondent.

The foster care worker, therapist, and foster mother testified that WNJ, who was 26 months old by the time of the continued hearing, had exhibited speech and developmental delays since *Johnson II* issued. Doctors had diagnosed WNJ with "Kawaski disease," which the witnesses claimed caused WNJ to suffer extreme and unpredictable allergic reactions to environmental stimuli. With treatment, WNJ will eventually overcome this disease, but her diagnosis was too new for doctors to make even short-range predictions. Genetic testing had also revealed a chromosomal disorder. The evidence is unclear but WNJ may possess an extra X chromosome. Either condition or both could contribute to the various delays and health problems experienced by the child.

The witnesses testified that WNJ's special needs required a high level of attention. WNJ had recently begun preschool through a special education program in the Plymouth-Canton school district. She was scheduled to begin a series of medical tests to ascertain the effect of Kawaski disease and the chromosomal defect on her body. WNJ also demands a lot of attention and requires constant supervision.

Witnesses further described that respondent had completed several services between April and November 2013. She had submitted to a psychiatric evaluation, began taking psychotropic medication, and appeared to be doing well. Respondent had completed parenting classes, domestic violence and substance abuse counseling, and had tested clean at various random drug screenings. However, the infant mental health therapist testified that respondent did not show an improvement in parenting skills before the November 2013 termination and never progressed to unsupervised parenting time. While respondent accepted some guidance regarding activities during her parenting time sessions, she was resistant to any suggested changes in her parenting style or techniques.

A persistent problem throughout the proceedings had also been respondent's failure to secure stable housing and a legal source of income. By the time of the continued hearing, respondent reported that she was cleaning houses and doing hair without a license, both for cash under the table. Respondent also asserted that she was working part-time in a factory through a

temp agency. She claimed that she attempted to secure proof of employment, but the temp agency would not provide it.

Ultimately, the court found termination of respondent's parental rights to be in WNJ's best interests. The court acknowledged that respondent loved her child very much. However, the court continued, "We have a child with special needs who is given a lot of one-on-one attention and mother is having a difficult time getting to her own needs at this point in time." Specifically, despite having nearly a year without the rigors of parenting and therapeutic services and the need to find time for visitation, respondent still had been unable to secure housing and income. While respondent showed a commitment to attending her parenting time sessions following this Court's remand, "that's just not enough," the court opined. Respondent had to "benefit from the services" for continued reunification efforts to be in the child's best interests. Given respondent's history, the court determined that she was "not in a position . . . to parent the child independent of intensive services, and those services have been ongoing for years." Although a 10-month "hiatus" had been caused by court errors, there was no reason to believe that respondent's return to services would be any more successful than prior attempts.

## II. BEST INTEREST ANALYSIS

The circuit court previously found termination supportable under MCL 712A.19b(3)(*l*) based on "[r]espondent's admission that she failed to comply with a parent-agency agreement for reunification with another child, and that her parental rights to [another child] were terminated in May 2012, together with the court records from that proceeding." *Johnson* I, unpub op at 1. Respondent has never challenged that conclusion. On remand, and as ordered by this Court, the circuit court focused solely on the best interests of the child to determine whether termination of respondent's parental rights was required.

"[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to it in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Relevant factors in this consideration include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

The evidence presented by the DHS supports that although respondent loves her child, she and WNJ do not share a bond. Through no fault of her own, respondent was unable to visit her child for a 10-month period. During that time, young WNJ forgot her mother. As a result, WNJ looks to the familiar adults supervising the visits, rather than her mother, for comfort and instruction. As attested to by the witnesses, the bond did not seem to improve over the course of the visits since early October 2014.

The DHS also established that despite respondent's efforts, she had not improved her parenting skills to the point she could adequately care for a toddler with special needs. The witnesses noted that respondent had completed several services before *Johnson I* demanded termination in November 2013. Although she had shown some progress during that six-month

-3-

period of services, the witnesses opined that respondent had not benefited to the point where she could have started unsupervised visits, let alone take custody of her child. Moreover, the April-November 2013 round of services was cumulative to similar services that respondent had repeatedly participated in since April 2007. As respondent had not adequately benefited from the services provided over a seven-year period, the court did not err in determining that it was against WNJ's interests to require her to wait and see if respondent could improve if given even more time.

Moreover, WNJ has been in foster care since she was four months old. She is now nearly 2-1/2 years old. She needs permanency and stability. Yet, respondent still cannot provide for the child. Even with prior employment and housing assistance, respondent has floated between the homes of friends and relatives, unable to secure a suitable residence for the child. Although respondent claims she has obtained employment, she could produce no proof for the foster care worker. As noted by the circuit court, respondent's inability to stabilize her own life is evidence of a conclusion reached in an earlier psychological evaluation: that respondent displays "weakness in identifying critical issues and providing adequate solutions."

Ultimately, respondent faced an uphill battle in challenging the DHS's evidence that termination was in the child's best interests after a 10-month gap in services and visitation. The circuit court based its termination decision not only on the up-to-date information at the November 2014 best-interest hearing, but also on respondent's performance in services between April and November 2013. A preponderance of the evidence established that respondent could not adequately provide for WNJ's special needs within a reasonable time and that termination of respondent's parental rights was in the child's best interests. Accordingly, we discern no error in the December 2014 termination decision.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

-4-