# STATE OF MICHIGAN

# COURT OF APPEALS

In re BESS/THOMPSON/BOLDEN/BROWN,
Minors.

UNPUBLISHED
June 12, 2018

No. 341188
Wayne Circuit Court
Family Division
LC No. 17-000915-NA

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her children, CLT, MB, JLB, and SAB (the minor children), under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury or physical or sexual abuse of the children), (*ii*) (parent failed to prevent abuse), (*iii*) (nonparent adult's act caused the physical or sexual abuse), (g) (failure to provide proper care and custody), (j) (reasonable likelihood that children will be harmed if returned to parent), and (k)(*iii*) (abuse included battery, torture, or other severe physical abuse). We affirm.

## I. INTRODUCTION

Petitioner, the Department of Health and Human Services (DHHS), filed a petition to terminate respondent's parental rights after substantiating allegations that the minor children had been physically abused by respondent, and that SAB had been sexually abused by respondent's live-in boyfriend, MW. Respondent has an extensive history of substantiated allegations of physical abuse and neglect with Child Protective Services (CPS) dating back to 2011. With respect to the allegations giving rise to this appeal, respondent repeatedly physically abused the minor children by beating them with a metal broom, a telephone and belts. Additionally, MW sexually abused SAB by inserting clippers, a needle and a pencil into her vagina, and touched her vaginal area over her pants when he picked her up from school. MW also attempted to drown both SAB[1] and JLB. Respondent failed to take steps to protect her children after learning of the abuse by MW.

Respondent tendered a no-contest plea to the statutory grounds for termination on August 3, 2017. On appeal, respondent's challenge to the trial court's decision to terminate her parental

---

[1] During MW's attempt to drown SAB the other children were forced to listen to SAB's screams.

rights focuses solely on the trial court's best-interest analysis. Specifically, respondent argues that the trial court clearly erred by finding that it would be in the best interests of the minor children if her parental rights were terminated where she had (1) benefitted from services, (2) acted to protect her children from MW, and (3) she has strong family support and a bond with her children.[2] We disagree.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). See also MCR 3.977(K). A finding is clearly erroneous if this Court is left with a "definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Additionally, this Court must defer to the trial court's "special ability" to evaluate the credibility of witnesses. *Id*.

## III. BEST-INTEREST ANALYSIS

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez Minors*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5) and *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The best-interests analysis focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). To determine whether the termination of a parent's rights is in the child's best interests, the trial court should consider the entire record. *In re Medina*, 317 Mich App at 237. Factors that the trial court may consider in making this determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.*, quoting *In re White,* 303 Mich App 701, 713-714; 846 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence[.]" *Id.* at 714.

The trial court found that termination of respondent's parental rights to the minor children would serve their best interests based on respondent's extensive CPS history, the severe physical abuse that all four children suffered, respondent's failure to protect her children from MW's physical and sexual abuse, and the lack of certainty that the children would be safe with respondent in the future. The trial court in particular noted that respondent minimized her actions and did not take ownership of her significant anger issues that culminated in physical

---

[2] To the extent that respondent advances a cursory argument asserting that her liberty interest in the care and custody of her children has been violated, once petitioner established by clear and convincing evidence that statutory grounds for termination of her parental rights existed, respondent's liberty interest no longer included the right to the custody and care of her children. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute on other grounds as recognized by *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

abuse against the children. After reviewing the record, we conclude that the trial court's decision to terminate respondent's parental rights was correct.

As an initial matter, respondent's denial that she physically abused the children both in the trial court and on appeal is undermined by the entering of her no-contest plea to the allegations in the petition, which detailed repeated examples of violent and cruel behavior against her children that were contained in the CPS Investigation Reports. For example, CLT disclosed that respondent beat him with a metal broom on his face and neck for 30 minutes, and choked him, causing him to cough up blood. JLB disclosed during an interview with authorities that respondent physically beat him with a telephone, leaving him with a black eye. Respondent also "disciplined" SAB by punching her, beating her with a belt and choking her. According to SAB, respondent found physically abusing SAB in this manner to be "funny." Further, the trial court's concern regarding respondent's lack of insight into her anger issues that manifested into physical abuse against her children is well-grounded in the record evidence, where during the best-interest hearing, respondent denied the allegations in the petition and instead minimized the gravity of her actions, noting that she had merely "whupped [her] children in the past." Given respondent's violent history with her children, the record evidence well supports the trial court's serious concerns regarding the children's safety if they were returned to respondent's home.

The trial court also considered respondent's extensive CPS history dating back to 2011. Notably, the trial court recognized that although respondent was provided with services to assist her with parenting, such as services with Families First and additional counseling services, she has not benefited from the assistance. Respondent continued to physically abuse her children to the extent that the two older children do not wish to return home.

The trial court also found that termination of respondent's parental rights to the children would serve their best interests where there was a significant likelihood of future harm to the children given respondent's failure to protect them from MW. By allowing MW to stay in her home and to have access to her children, respondent created a dangerous environment for them, exposing them to sexual and physical abuse. MW violently sexually abused SAB on multiple occasions. Contrary to respondent's assertion that she acted immediately when she learned of the sexual abuse, MB reported that respondent would merely cry, and the record reflects that respondent took no action to protect SAB and the other children from MW.[3] Respondent also admitted to a CPS worker that she did not seek medical treatment for SAB following the sexual abuse because respondent did not see "anything wrong with [SAB's] genital area." SAB also reported that when she told respondent about the sexual abuse, respondent forbid SAB from telling the police. In addition to sexually abusing SAB, MW burned her with boiling water, and attempted to drown both her and JLB. Put simply, respondent's failure to protect her children from MW resulted in heinous and repeated instances of sexual and physical abuse.[4] Under these

---

[3] Though respondent would sometimes tell MW to leave the house, she would eventually allow him to return.

[4] In a cursory fashion, respondent argues on appeal that the September 5, 2017 Clinic for Child Study report improperly asserted that she suffers from various mental illnesses, and that such

circumstances, we agree with the trial court that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

---

allegations are improper where respondent was never evaluated or diagnosed with a psychiatric condition. In the report, under "diagnostic formulations[,]" the licensed psychologist who interviewed respondent and met with her children stated that diagnoses of Intermittent Explosive Disorder and Borderline Personality Disorder were appropriate for respondent. However, a review of the record confirms that evidence concerning these diagnoses was not dispositive in the trial court's decision to terminate respondent's parental rights. Instead, the trial court focused its analysis on its concern that the children would not be safe in respondent's custody where respondent and MW had physically abused the children, and where MW sexually abused SAB. Also pivotal to the trial court's analysis was its concern that respondent did not recognize her issues with managing her anger in spite of having participated in two anger management courses.