*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BIRD/CATMULL, Minors.

UNPUBLISHED
March 12, 2019

No. 344686
Oakland Circuit Court
Family Division
LC No. 2017-857210-NA

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, KB and ZC,[1] under MCL 712A.19b(3)(g).[2] We affirm.

For her first issue on appeal, respondent argues that the trial court erred when it found that the Department of Health and Human Services (DHHS) established a statutory ground for termination. We disagree. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

Following a combined adjudication trial and statutory-grounds hearing, the trial court found clear and convincing evidence to terminate respondent's parental rights under MCL

---

[1] Respondent has given birth to six children. She voluntarily relinquished her parental rights to four older children in prior proceedings. Only her parental right to KB and ZC are at issue in this appeal.

[2] Although respondent asserts that her parental rights were also terminated under MCL 712A.19b(3)(c)(*i*) and (j), the trial court only found clear and convincing evidence to support termination under MCL 712A.19b(3)(g).

712A.19b(3)(g).  At the time of the trial court's ruling, MCL 712A.19b(3)(g) permitted termination of parental rights if:

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[3]

After reviewing the entire record, we conclude that the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(g).

The evidence established that in August 2017, respondent attempted suicide while her children were present in the home and in her care and custody.  Then, in September 2017, KB and ZC were removed from respondent's care after Child Protective Services (CPS) learned that respondent, upon her expulsion from a shelter and resulting homelessness, intended to live with her nine-month-old daughter, KC, in a tent at an Oakland County campground.  In addition, in the three years after KB's birth, respondent moved at least five times.  Respondent's homelessness and suicide attempt, coupled with her persistent instability, demonstrated that she had not provided her children with proper care and custody for most of their young lives.

The evidence likewise supported the trial court's finding that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages.  Respondent has a long-standing history of emotional, financial, and housing instability, and there was no evidence to suggest that these issues had ever been adequately addressed or eliminated.  Respondent's history of emotional instability dated back to her childhood.  She described being the victim of sexual assault at a young age, which compelled her to attempt suicide twice in her teens.  Respondent also attempted suicide when she was 23 years old, and again in 2004 when she learned that she was pregnant with one of her older children.  In total, respondent had a documented history of seven suicide attempts.  At the time of the termination hearing, there was little evidence that respondent had taken the measures necessary to adequately address her mental health issues.  Although

---

[3] MCL 712A.19b(3)(g) was amended by 2018 PA 58, effective June 12, 2018.  As amended, this section provides:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Although the ultimate order terminating respondent's parental rights was entered on June 15, 2018, the trial court made its findings about the existence of a statutory ground on January 26, 2018, and entered a corresponding order on February 2, 2018, both before the effective date of the amendment.  Neither party has argued that the trial court applied the wrong version of MCL 712A.19b(3)(g).

respondent was not offered a parent-agency agreement after KB and ZC were removed, she was strongly encouraged to participate voluntarily in services designed to address her emotional health and financial instability. But respondent did not embrace available services. After her discharge from Pontiac General Hospital following her August 2017 suicide attempt, she was referred to Community Network Services (CNS) for treatment but failed to timely pursue this referral. When she finally attended her intake meeting and psychotherapy assessment at CNS, it was recommended that she participate in individual and group therapy. But respondent again delayed participating in these services. Though respondent eventually attended monthly medication reviews and some meetings with her case manager, she only attended two individual therapy sessions in the seven months following her psychotherapy assessment. She made no effort to attend any group sessions, asserting that she did not believe that she would benefit from the group dynamic. Based on respondent's long history of emotional instability and her failure to adequately address it, there is no reasonable expectation that she will be able to obtain the emotional stability necessary to parent her children within a reasonable time.

Respondent's CPS history, dating back to 2004, further bears upon whether there could be any reasonable expectation that she would be able to provide proper care for her children in the foreseeable future. In 2004, respondent's three oldest children were removed from her care amidst allegations of physical and medical neglect, and mental, financial, and housing instability. Respondent was provided with services, and, approximately 2½ years later, the children were returned to her care. Yet it appears that respondent did not internalize what she was taught because, in 2011, another petition was filled containing allegations of physical neglect, medical neglect, mental instability, and lack of suitable housing. Ultimately, in August 2011, respondent voluntarily relinquished her parental rights to her three oldest children.[4] In the current action, respondent acknowledged that, in 2011, her homelessness and heroin addiction prevented her from providing a safe and nurturing environment for her children.

After the voluntary termination of her parental rights, respondent moved to Utah with her second husband. During this marriage, respondent participated in some manner in the kidnapping, assault, and torture of a man, which resulted in her pleading guilty to second-degree aggravated assault. Respondent served a 17-month prison sentence. Respondent then participated in a court-ordered drug rehabilitation program, during which she became pregnant by another man in the program and gave birth to KB. After that relationship ended, respondent entered into another relationship during which ZC was born. When KB and ZC were removed from respondent's care in the fall of 2017, it was because, again, respondent's emotional instability and the lack of stable, suitable housing placed her children at risk. Despite being offered services, respondent continues to repeat the same pattern of behavior. In light of this evidence, the trial court did not clearly err when it found that there was no reasonable expectation that respondent will be able to provide proper care and custody of her children within a reasonable time.

---

[4] Respondent's fourth child was born after she relinquished her rights in 2011. Respondent explained that, after the fourth child was born, she voluntarily released her rights to the child because she did not think that it would be fair to keep the fourth child after losing the other three.

Despite overwhelming evidence to support termination of parental rights under MCL 712A.19b(3)(g), respondent asserts that termination was improper because the DHHS failed to make reasonable efforts toward reunification. While, generally, reasonable efforts must be made to reunite the parent and children unless certain aggravating circumstances exist, the DHHS is not required to provide reunification services when termination of parental rights is the agency's goal. *In re Moss*, 301 Mich. App 76, 90-91; 836 NW2d 182 (2013) (quotation marks and citations omitted). Here, the DHHS sought termination of respondent's parental rights in the initial petition, so it was not required to provide reunification services.

Respondent next argues that the trial court erred when it found that that termination of her parental rights was in the children's best interests. Again, we disagree. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, the parent's continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App at 131.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. Evidence of respondent's chronic instability included an extensive CPS history, the relinquishment of her parental rights to three older children because of a heroin addiction and homelessness, a transient lifestyle, poor judgment and decision making, and seven suicide attempts. Respondent could not provide the stability and consistency that was required to safely parent two young children. Moreover, there was no evidence that respondent would be able to achieve that stability within a reasonable time in order to meet the children's needs. The evaluating psychologist opined that respondent would need to be engaged in mental health treatment for one to two years before a child would be safe in her care, assuming that she addressed her other issues. At the time of termination, KB was 3½ years old and ZC was 18 months old. They were too young to wait one to two years for respondent to possibly achieve the stability necessary to provide proper care and custody.

By contrast, though the children were in separate foster care placements, they were thriving in their respective placements, and the foster parents both expressed a desire to provide permanency for the children in their care. Moreover, the foster families indicated a willingness to nurture the sibling bond between KB and ZC should respondent's parental rights be terminated and adoption pursued. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42. It is apparent that KB and ZC were placed in stable homes

where they were progressing, and that this progress could continue because the foster parents indicated a willingness to provide long-term care.

Respondent argues that the existence of a familial bond between her and the children weighed against terminating her parental rights. But to any extent that a bond existed, it would not outweigh the children's need for safety and security, particularly considering that respondent's instability was taking its toll on KB; the caseworker noted that KB was becoming increasingly irritable during respondent's parenting time visits.

Respondent argues that toward the end of the case she had demonstrated some progress, pointing out that, on the last day of the best-interest hearing, respondent reported that she had secured a full-time job that she was scheduled to begin four days later, and that she and her partner had obtained suitable housing. While respondent argues she should be given more time in light of this supposed progress, given her history of instability, the trial court did not clearly err when it determined that respondent's last-minute efforts came "too little, too late." Respondent's efforts were insufficient to demonstrate that she would be able to consistently and safely parent her children in the foreseeable future. The children were at an age where they required stability, permanency, and finality in order to foster their continued growth and development. There was no evidence that respondent would be able to meet her children's needs anytime soon. Accordingly, the trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause