*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HEATH, Minor.

UNPUBLISHED
May 9, 2019

No. 345911
Montcalm Circuit Court
Family Division
LC No. 2017-000774-NA

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights when she failed to adequately participate in and benefit from services to rectify issues of substance abuse, domestic violence, and educational neglect. Respondent does not challenge the statutory grounds supporting the termination decision, but rather contends that termination of her parental rights was not in her daughter's best interests. We affirm.

## I. BACKGROUND

The court took jurisdiction over then 6½-year-old JH on February 9, 2017. JH had already missed 55 days of school that year, her second trip through kindergarten. JH had missed 117 days of school the year prior. Respondent admitted to educational neglect and the court exercised jurisdiction but continued JH in her mother's care. The educational neglect was fueled by other issues at home. Respondent had only recently secured housing after a period of homelessness. During that time, JH attended six different schools. Moreover, JH's father was abusive of respondent and respondent had only recently ended their relationship.[1] Respondent also abused prescription pain killers.

The 2017/2018 schoolyear did not begin on a promising note. By September 25, 2017, JH already had three absences, two tardies, and three early school releases. School officials

---

[1] The court terminated the rights of JH's father on November 19, 2018. Father is not a party to this appeal.

observed that JH suffered emotionally as a result of her absences and witnessing domestic violence in the home. Respondent continued to struggle with opiate addiction and JH's father's probation officer confirmed that father was spending time at respondent's residence. The court granted an emergency motion to remove JH from the home and she was placed in foster care.

The court ordered respondent to attend substance abuse counseling and support meetings at least three times each week. Respondent rarely attended counseling sessions or support meetings. The court ordered respondent to submit to a psychological evaluation. She delayed several months in complying and was then diagnosed with severe opioid abuse disorder in remission. Respondent rarely appeared for random drug screens. When she did appear, respondent often testified positive for unprescribed pain killers or presented samples that were diluted or appeared to belong to someone else. Respondent failed to participate in ordered parenting classes. However, respondent's supervised parenting time sessions went well.

On June 12, 2018, the circuit court ordered the Department of Health and Human Services (DHHS) to file a petition to terminate respondent's parental rights based on her lack of progress in services. Due to her incarceration for narcotic possession, respondent exercised no parenting time with JH for a period of time before the termination hearing. Following a brief hearing at which respondent was the only witness, the circuit court terminated her parental rights pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions that led to removal), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood the child would be harmed if returned to parent's care).

Relevant to this appeal, the court described the timeline of services offered to respondent and her failure to participate or benefit. The court noted that JH had been removed from her mother's care in September 2017, a year earlier, and "there's been no progress that's been made." Indeed, "[t]here's been a complete failure to comply with or complete a case service plan." The court "ha[d] no doubt that [respondent] has deep affection for and loves her child" and agreed that "there's a bond between the mother and the child." However, the court found termination to be in JH's best interests.

> Unfortunately, in this Court's opinion, [respondent] can't put that love and affection into action to provide for her child in the manner that the child needs to be provided for. She doesn't have adequate housing. She doesn't have income. She has disability. She couldn't complete a case service plan knowing that her - - that efforts for reunification had to be made in order to have the child placed back in her home. She didn't come close to completing the case service plan. And, in fact, one of the key aspects of this case was her substance abuse issues and inpatient treatment was ordered. She checked into three different in-house, inpatient treatment programs and didn't complete any of them. Left early every time. She simply wasn't dedicated, in this Court's opinion, to do the things necessary that she knew she had to do to get her daughter back in her care and custody. The case wasn't helped in any manner by the fact that she went to jail for 90 days - - or 60. . . . And if you can't do the things that you're supposed to do to get your child back - - and these weren't unreasonable. AA/NA, she didn't do it as required. Inpatient treatment, she couldn't do; she wouldn't complete. Counseling . . ., she didn't do. Substance abuse counseling, she didn't do as

required. . . . She doesn't have housing. She hasn't done the things necessary to have the child placed back in her care, and it shows - - satisfies the Court that the child doesn't mean enough to the mom that she would do those things to have her placed back with her. So for those reasons, I'm finding it is in the best interest of the child to terminate the mother's parental rights.

Respondent now appeals, challenging the court's best-interest determination, but not the court's finding that statutory factors supported termination.

## II. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The court should weigh all the evidence available to it in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The circuit court recognized the bond between respondent and JH and the love they shared. This standing alone was insufficient to maintain respondent's parental rights. Respondent was unable to demonstrate improved parenting ability. Even with court involvement, while JH remained in her mother's care, she continued to miss school. On the eve of the termination hearing, respondent continued to allow JH's father into her home. Respondent had not truly participated in any substance abuse treatment program and continued to suffer from addiction. She lost her home during these proceedings, lived in a shelter for a time, and was living with her sister and nephew in a small apartment at the time of termination. Accordingly, respondent could not provide JH with a permanent, stable, and appropriate home. On the other hand, JH had improved academically and received regular counseling while in her foster placement. JH bonded well with her foster mother and although she expressed some distress over the loss of her mother, did not exhibit lasting trauma. On this record, we discern no error in the circuit court's termination decision.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

-3-