*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. M. JOINER, Minor.

UNPUBLISHED
August 15, 2019

No. 347802
Wayne Circuit Court
Family Division
LC No. 16-522425-NA

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor child pursuant to MCL 712A.19b(3)(c)(*i*) and (g).[1] We affirm.

## I. BACKGROUND

Around 2005, respondent moved with his mother from Cleveland, Ohio to Detroit, Michigan. In 2008, when respondent was approximately 15 years old, he impregnated an 18-year-old woman of diminished capacity. The woman told respondent about the pregnancy, but respondent and his mother were homeless and moved back to Cleveland before the child was born.

After the woman gave birth to JMJ on January 22, 2009, she and JMJ lived with her mother, the child's maternal grandmother. Respondent remained in Cleveland and had no contact with JMJ and did not contribute to her care. In 2011, respondent, then 17 years old, was convicted of several felony offenses in Ohio and sentenced to a minimum term of eight years' imprisonment with an earliest release in January 2019. During 2012, JMJ's mother had a falling-out with her mother and left, abandoning JMJ in her care.

---

[1] The trial court's written order erroneously refers to MCL 712A.19b(3)(j) as a ground for termination. In its ruling from the bench the trial court twice stated that clear and convincing evidence to terminate respondent's parental rights did not exist under that statutory ground.

JMJ's mother moved in with a man who later fathered two more children with her. Child Protective Services (CPS) became involved in 2016 when those children were found to have suffered serious abuse and neglect. Although JMJ lived with her maternal grandmother for four years, when CPS began its investigation in March 2016, it concluded that her maternal grandmother lacked suitability as an appropriate placement because of a history of drug abuse and involvement with CPS. Consequently, CPS removed JMJ from her grandmother's care. Because of his incarceration, respondent never saw JMJ and lacked the ability to care for her. To this day, respondent has never physically met JMJ in her entire life.

In March 2016, the Michigan Department of Health and Human Services (DHHS) petitioned seeking termination of the parental rights of respondent, JMJ's mother, and the father of her mother's other children. In the 2-1/2 years that followed, during which time respondent remained incarcerated, the trial court held numerous hearings including two termination hearings. After the first hearing in 2016, while the trial court found statutory grounds to terminate respondent's parental rights, it concluded that termination did not serve JMJ's best interests. At the conclusion of a second termination hearing in 2018, however, the trial court terminated respondent's parental rights.[2] Respondent now appeals.

## II. STATUTORY GROUNDS

On appeal, respondent argues that the trial court erred when it found that petitioner established a statutory ground for termination by clear and convincing evidence. We disagree.[3]

We review "for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (citation omitted). A trial court's factual finding "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (citation and alteration omitted). To terminate parental rights, the trial court must find that clear and convincing evidence established at least one of the statutory grounds for termination under MCL 712A.19b(3). *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). If this Court concludes that the trial court did not clearly err by finding one statutory ground for termination, this Court does not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (g), which permit termination of parental rights when the following conditions are satisfied:

---

[2] In its June 29, 2018 order, the trial court terminated JMJ's mother's parental rights to JMJ. This Court affirmed that decision. *In re Joiner/Jones*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 2019 (Docket No. 345359).

[3] Respondent does not assert on appeal that the trial court erred by ruling that termination served JMJ's best interests. Therefore, we do not address that issue.

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[4]

In this case, JMJ came into care in March 2016, in part because respondent was incarcerated which made him unavailable to care and provide for her when it became apparent that JMJ's mother and maternal grandmother were not appropriate caregivers. Respondent's history of failing to provide for his child, when he was at liberty and able to do so, also contributed to the trial court's taking jurisdiction over JMJ. At the time of termination nearly three years later, clear and convincing evidence established that these conditions continued to exist and no reasonable likelihood existed that they would be rectified within a reasonable time considering JMJ's age.

At the July 2018 termination hearing, the evidence established that, because of his criminality, respondent remained incarcerated and unavailable to care for JMJ because, during 2011, at the age of 17, respondent was convicted of aggravated burglary, aggravated robbery, felonious assault, and attempted felonious assault. He was sentenced to serve a minimum eight-year term of imprisonment and he was not eligible for release until December 2018.

---

[4] We note that the trial court applied the wrong version of MCL 712A.19b(3)(g) which the Legislature amended by 2018 PA 58, effective June 12, 2018. The current version of MCL 712A.19b(3)(g) replaces "without regard to intent" with "although, in the court's discretion, financially able to do so[.]" The supplemental permanent custody petition, filed on November 14, 2017, cited the preamendment version of the statute that was in effect at the time. In its July 17, 2018 ruling from the bench terminating parental rights, the trial court based its ruling on the preamendment language of the statute. Both the July 17, 2018 hearing on statutory grounds and the entry of the November 9, 2018 order terminating parental rights occurred after the effective date of the amendment. Because the amendment became effective on June 12, 2018, the trial court erred by failing to make findings consistent with the amended statute. However, only one statutory ground is required to terminate parental rights. See *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). However, for the reasons set forth in this opinion, the trial court's error in applying the wrong version of MCL 721A.19b(3)(g) does not warrant reversal.

-3-

Consequently, at the time of termination, respondent lacked availability to care for JMJ. Indeed, the record reflects that respondent never provided for his child's care. In the two years that followed JMJ's birth in 2009 but before his incarceration in 2011, respondent had no contact with her and provided nothing for her care. When asked if he had ever contributed to JMJ's support, respondent indicated that he was never asked to do so. Further, the record reflects that respondent did not establish paternity until after this case commenced in 2016. Over the years, respondent abdicated his responsibility as a parent to the child's mother, a woman of diminished capacity, and to JMJ's maternal grandmother who had problems of her own that made her unsuitable for placement.

After his incarceration, respondent continued to neglect JMJ's needs. Incarceration alone is not a sufficient reason for termination of parental rights. In *In re Mason*, 486 Mich at 160, our Supreme Court recognized that "[t]he mere present inability to personally care for one's child as a result of incarceration does not constitute grounds for termination." Nevertheless, the Court explained that "a parent can fulfill his duty to provide proper care and custody in the future by voluntarily granting legal custody to his relative during his remaining term of incarceration." *Id*. at 163. In this case, while respondent requested placement with two relatives, his mother and aunt, neither individual was found suitable for placement. The trial court did not err by finding that clear and convincing evidence established that respondent did not provide for JMJ's care in his absence.

Clear and convincing evidence also established that no reasonable likelihood existed that respondent would be able to rectify the conditions that led to the adjudication within a reasonable time considering JMJ's age. At a minimum, before JMJ could be placed in respondent's care, when released from prison, he would need to establish suitable housing and obtain a legal source of income. Further, respondent would have to demonstrate proper parenting skills. At the time the court found statutory grounds to terminate his parental rights, respondent had six months remaining on his eight-year minimum sentence. When the hearing resumed for the best-interest determination, respondent still had three months to serve on his minimum sentence. Respondent admitted that he would need another six months to a year after his release from prison to find employment, secure housing, and establish a bond with his daughter. Under the circumstances of this case, the trial court did not err when it concluded that respondent projected an unrealistic timeframe to achieve everything required of him to warrant placement of JMJ in his care.

The record reflects that, before his incarceration, respondent had not been a fully-functioning adult and upon his release from prison, respondent would be required to navigate an unfamiliar adult world. Although he planned to work briefly with his mother at a fast-food restaurant that she managed, and then attend culinary school, no evidence established that he would earn enough money to meet his needs or JMJ's needs. The record also reflects that respondent planned to live with his mother, but her home had been deemed unsuitable. Even if respondent were to obtain housing and employment, he would still need to develop a relationship with his daughter and demonstrate that he could provide proper care and custody for her. The foster care worker testified that, in her experience, it would take well over six months, perhaps years, for respondent to establish a proper parent-child bond. The record indicates that respondent contacted JMJ via phone while incarcerated but he failed to demonstrate the requisite parenting acumen in these contacts.

At the time of termination of respondent's parental rights, nine-year-old JMJ had already been in care for almost three years. During that time, she had been moved at least twice. Under the circumstances, the trial court did not err by finding that it would have been unreasonable to demand that she wait another six months to a year for respondent to potentially gain the skills to parent and the financial ability to provide her proper care in a stable home. The trial court did not clearly err by finding that clear and convincing evidence established that a reasonable likelihood did not exist that respondent could rectify the conditions that led to the adjudication within a reasonable period of time considering the child's age. Accordingly, the trial court did not clearly err by finding clear and convincing evidence established statutory grounds under MCL 712A.19b(3)(c)(*i*) to terminate respondent's parental rights.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford