*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. J. CLARK, Minor.

UNPUBLISHED
February 20, 2020

No.  346243; 349740
Wayne Circuit Court
Family Division
LC No.  18-000838-NA

Before:  REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father appeals as of right the orders terminating his parental rights to his child, JJ.  The trial court terminated respondent's rights under MCL 712A.19b(3)(h) ("parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age") and MCL 712A.19b(3)(j) ("reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent").  We affirm.

Respondent first argues that the trial court erroneously exceeded the scope of this Court's remand order.  After respondent's parental rights were terminated on October 10, 2018, petitioner filed a motion to remand the case "to the trial court for a new dispositional hearing on whether there are statutory grounds to terminate [respondent's] parental rights."  We granted petitioner's motion and directed the trial court to make findings on the record as to whether statutory grounds existed by clear and convincing evidence to terminate respondent's parental rights.[2]  On remand, the trial court took additional testimony from respondent.  Therefore, respondent contends that the

---

[1] *In re J J Clark Minor*, unpublished order of the Court of Appeals, entered July 24, 2019 (Docket Nos. 346243; 349740).

[2] *In re JJ Clark Minor*, unpublished order of the Court of Appeals, entered May 2, 2019 (Docket No. 346243).

trial court exceeded our directive to make findings based solely on the record as to whether statutory grounds existed to terminate respondent's parental rights. We disagree.

"When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012). "It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2 365 (2005) (quotation marks and citation omitted).

We remanded this matter under MCR 7.216(A)(5), which states that this Court may remand a case, at any time, "to allow additional evidence to be taken[.]" At the dispositional hearing held on October 10, 2018, the trial court relied on the clinic evaluation report in determining that there were statutory grounds to terminate respondent's parental rights. At the remand hearing, the court reasoned that respondent's "testimony or admissions would be the basis to make the findings of the statutory grounds." The court then proceeded to question respondent regarding statements contained within the same clinic evaluation report to determine whether statutory grounds existed by clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3). Respondent admitted that he was currently incarcerated and his earliest release date is in 2021. He also admitted that during the clinic evaluation interview he stated that he was willing to allow his parental rights to be terminated because he did not have any family members who could care for JJ while he was incarcerated. And respondent admitted that before being incarcerated, he only had limited contact with JJ.

Respondent argues the trial court exceeded the scope of this Court's directive when it held a new dispositional hearing to determine whether statutory grounds existed to terminate respondent's parental rights. However, we remanded this matter under MCR 7.216(A)(5) which specifically allows for additional evidence to be taken. And our remand order did not require that the trial court base its decision solely on the preexisting record; rather, our remand order directs that the trial court "shall hear and decide the matter within 56 days of the date of this order and shall make an appropriate determination on the record." On the basis of the record and respondent's admissions, the court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL712A.19b(h) and (j). The trial court's actions were clearly in accordance with our directive to "make findings on the record pursuant to MCL 712A.19b regarding whether statutory grounds exist by clear and convincing evidence that respondent's parental rights should be terminated." *In re J J Clark Minor*, unpublished order of the Court of Appeals, entered May 2, 2019 (Docket No. 346243). Therefore, the trial court did not exceed the scope of our instructions on remand when it held a hearing to determine whether statutory grounds existed to terminate respondent's parental rights.

Second, respondent argues that the trial court clearly erred when it determined that there was clear and convincing evidence to terminate his parental rights under MCL 712A.19b(3)(h) and (j). We disagree.

To terminate parental rights, the trial court must find at least one of the statutory grounds for termination listed in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review the trial court's factual findings and ultimate decision for clear error. *In re Mason*, 486 Mich 142, 152;

782 NW2d 747 (2010). A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Olive/Metts Minors*, 297 Mich App at 41 (citation omitted).

The first ground relied on by the trial court, MCL 712A.19b(3)(h), states that a parent's rights may be terminated if

> [t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Respondent is currently incarcerated for carjacking and is serving a minimum sentence of 3 years and 9 months imprisonment. Thus, the first prong of MCL 712A.19b(3)(h) is met because respondent "is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years." With respect to the second prong, respondent was paying child support before he went to prison. However, since being incarcerated, respondent has not provided any additional support and has not identified a relative or family member to care for the child. In addition, respondent only saw JJ about ten times before being incarcerated. Thus, the second prong of MCL 712A.19b(3)(h) is satisfied because there was evidence establishing that respondent had "not provided for [JJ's] proper care and custody." MCL 712A.19b(3)(h).

"The third necessary condition is forward-looking . . . ." *In re Mason*, 486 Mich at 161. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160. Therefore, "the trial court must consider whether the imprisonment will deprive a child of a normal home for two years in the future, and not whether past incarceration has already deprived the child of a normal home." *Id*. at 161-162 n 12 (quotation marks and citation omitted). Respondent argues that the trial court erroneously terminated respondent's parental rights solely because of his incarceration and that the trial court did not properly assess whether respondent would be able to provide proper care and custody for JJ after he is released from prison. However, respondent stated in his clinical evaluation, and at the remand hearing, that his mother is already taking care of two of his other children while he is incarcerated so she is unable to also care for JJ. Respondent admitted that he was unable to provide for the care of JJ while he is incarcerated. There is no evidence in the record that suggests respondent attempted to achieve proper care and custody for JJ through placement with a different relative. In fact, respondent stated that because he is unable to care for JJ while he is incarcerated, he was willing to allow his parental rights to be terminated. On the basis of respondent's own admissions "there is no reasonable expectation that [respondent] will be able to provide proper care and custody within a reasonable time considering the child's age." Thus, the third prong of MCL 712A.19b(3)(h) is satisfied. Accordingly, the trial court properly determined that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(h).

The trial court also found that MCL 712A.19b(3)(j) was a statutory ground for termination of respondent's parental rights. In other words, clear and convincing evidence established that there was "a reasonable likelihood, based on the conduct or capacity of the child's parent, that the

child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). In addition to physical harm or abuse, emotional harm also constitutes grounds for termination of parental rights under MCL 712A.19b(3)(j). *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Respondent argues that there was no evidence JJ would be harmed if he lived with respondent upon his release from prison. Respondent contends that his criminal history is not evidence that JJ would be harmed if he eventually resided with respondent because respondent has never been convicted of a violent crime. However, respondent is currently incarcerated for carjacking and one of the elements of that crime is the use of force or violence, or the threat thereof. *People v Cain*, 495 Mich 874, 875; 838 NW2d 150 (2013); *People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998).

Petitioner also contends that there is a reasonable likelihood JJ would be harmed emotionally and physically if JJ was in respondent's care and custody when he is released from prison. The basis for this argument is that respondent essentially abandoned JJ before being incarcerated because he had only seen JJ ten times. Further, since respondent has been in prison he has failed to arrange for proper care or custody of JJ and admitted that he is willing to allow his parental rights to be terminated. In addition, respondent has not expressed a desire to parent JJ while he is incarcerated or when he is released from prison. And there is no indication that respondent has attempted to contact JJ while in prison. Again, respondent stated multiple times he was willing to allow his parental rights to be terminated because he is unable to care for JJ. Before being incarcerated, respondent only had limited contact with JJ because he was not in a relationship with JJ's mother and he was unsure whether he was JJ's biological father. Further, before respondent was incarcerated, he left JJ in the care of his mother, who suffered from schizophrenia, bipolar disorder, and depression. While JJ was living with respondent's mother, she experienced a psychiatric episode and was observed holding JJ outside the second story window of her residence. Respondent completely ignored all potential risks to JJ's safety by leaving him with a woman who suffered from significant mental illness. Respondent also has two other children who are in his mother's care. Because respondent has been unable to personally care for his two other children, it is likely that JJ would not be properly cared for if he was placed in respondent's custody. Therefore, the trial court did not clearly err when it concluded clear and convincing evidence established that termination was proper under MCL 712A.19b(3)(j).

Lastly, respondent argues that termination of his parental rights was not in the child's best interests. Specifically, respondent asserts that the trial court failed to properly consider that despite his limited contact with JJ before his incarceration, respondent had provided financial support for JJ. Further, although respondent's bond was not as strong as he would like it to be, he testified that there "was something there." Respondent also argues that the trial court did not properly address JJ's placement with his maternal aunt, a factor which weighs against termination. We disagree.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance Minors*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "Best interests are determined on the basis of the

preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App at 733. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (internal citations omitted). When the trial court makes its best-interests determination, it may rely upon evidence on the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

In addition, "a child's placement with relatives weighs against termination . . . ." *In re Mason*, 486 Mich at 164. "[T]he fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App at 43. While the trial court may terminate parental rights in lieu of placing the child with relatives, a child's placement with relatives "is an explicit factor to consider in determining whether termination was in the children's best interests." *Id.* (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

In making its best-interests determination, the trial court noted that respondent was currently unable to provide care for JJ, that respondent had very limited contact with JJ before being incarcerated, and that respondent's bond with JJ was not as strong as he would have liked. Respondent argues that the record contains inconsistent statements with regard to his plan to provide care for JJ. At the clinic evaluation, respondent stated that he wanted to be involved in his children's lives. We find this argument unconvincing. Respondent consistently stated on the record that he is unable to provide care for JJ while he is incarcerated because his mother is currently caring for two of his other children and he does not have any other family members who can provide care for JJ. Although respondent made child support payments before being incarcerated, he testified that he has not provided support since being incarcerated. Respondent also stated at his clinic evaluation that he was willing to allow his parental rights to be terminated because he was unable to provide care for JJ. This evidence weighs negatively against respondent's ability to parent and support JJ's need for permanency and stability. Respondent also argues that the evidence is inconsistent with respect to his bond with JJ. However, respondent stated in his clinic evaluation that he only had "face to face" contact with JJ ten times before being incarcerated. At the remand hearing, respondent confirmed that he had only limited contact with JJ before being incarcerated.

Respondent also argues that the trial court did not properly consider that JJ was living with his maternal great aunt. Respondent, however, misstates the record because the trial court took judicial notice of the lower court file, which contained the clinic evaluation report. The clinic evaluation report contained an interview with JJ's great aunt, where she stated "that she can only care for [JJ] temporarily and is not interested in assuming long term placement or adoption." The report also states that JJ's maternal grandmother is "unable to care for [JJ] due to health reasons." JJ's maternal aunt reported that she had a niece who had expressed interest in obtaining custody of JJ. "However, it should be noted that every time it is time for her niece to meet with the worker regarding planning for obtaining custody, she fails to follow through; consequently she is unsure if her niece is actually interested." Thus, the trial court did consider JJ's current placement with a

relative and determined that a permanent custody arrangement with a relative was unattainable. In addition, respondent stated that he does not have any other family members who can provide care for JJ. Therefore, on the basis of the record, respondent is unable to provide JJ with permanent care and custody and the trial court did not clearly err by finding that termination of respondent's parental rights was in JJ's best interests.

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto