*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. WILLSON, Minor.

UNPUBLISHED
July 16, 2020

No. 352128
Jackson Circuit Court
Family Division
LC No. 18-000119 - NA

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

The circuit court took jurisdiction over respondent-father's infant son because respondent was in jail and could not provide care and custody when the child was removed from his mother's care. The court terminated respondent's parental rights when the child was 16 months old because respondent had done nothing to comply with a parent-agency agreement and had not even met his child. Respondent now challenges the grounds for taking jurisdiction as well as the statutory grounds for terminating his parental rights. We discern no error and affirm.

## I. BACKGROUND

NW was born on August 18, 2018 and immediately was removed from his mother's care. Respondent was incarcerated and could not take custody of the baby. Accordingly, the Department of Health and Human Services (DHHS) filed a jurisdictional petition naming respondent. At the adjudication trial, respondent informed the court that he would be incarcerated until March 3, 2019. He was then in jail because he had cut off his tether while released on parole. The court ordered respondent to participate in a program offered at the jail called Rehabilitating Medicating and Assisted Treatment (RMAT). The court further ordered that once released, respondent submit to a psychological evaluation, participate in parenting classes, undergo substance abuse treatment and random drug screens, and maintain contact with the DHHS. The court allowed respondent to visit his son, with supervision, postincarceration.

Respondent stopped attending the court-ordered RMAT program while in jail, because he did not "want[] to" participate in the program. Respondent was released in March 2019, but failed to contact the DHHS case worker. As a result, respondent never started services geared toward reunification, and never met his child. Respondent also failed to keep in touch with his parole officer. Respondent later admitted that he used substances and did not want to get arrested if he

contacted the case worker. He also later stated, "I was busy - - I was doing parole . . . . I felt like I had to do one thing at a time." Respondent spent the next several months in and out of jail for failure to comply with parole. As a result of respondent's continual moves and incarcerations, the case worker could not locate him for months at a time, although she did make "face to face contact" with respondent in jail on April 3 and June 7, 2019. Only when respondent was incarcerated for a longer period did he begin appearing at court hearings again.

On October 25, 2019, NW was diagnosed with cerebral palsy. His foster parents were required to take NW for occupational and physical therapy twice a week. They continued to care for the child and expressed their desire to adopt NW and provide for him permanently.

In December 2019, the court terminated respondent's parental rights under MCL 712A.19b(3)(g) and (j), after finding that respondent had made no effort to provide proper care and custody for his child and that the child, who required extensive care, would be in danger of harm if placed with a parent who had demonstrated no parenting ability during the proceedings.

## II. ADJUDICATION

Respondent first challenges the failure of the DHHS and the circuit court to identify the specific statutory ground supporting jurisdiction. We review for plain error challenges to the adjudication raised after the court has terminated parental rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

Contrary to respondent's contention, the court did cite a ground for assuming jurisdiction at the December 11, 2018 trial: "an unfit home by reason of neglect, cruelty, criminality, drunkenness, or depravity on the part of parents." And the DHHS checked the box with similar language on the jurisdictional petition form. This language corresponds with MCL 712A.2(b)(2), which provides for the assumption of jurisdiction over a child "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in." "Neglect" under this provision

> means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [MCL 722.602(1)(d).]

This ground was supported by the record evidence. To assume jurisdiction over a child, the court must find that a statutory ground is supported by a preponderance of the evidence. *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014); *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Here, respondent's criminal acts led to his incarceration at the time of the jurisdictional trial. His incarceration, along with the drug use of the child's mother, left NW without a fit home. And neither parent suggested an alternative placement for the baby. Accordingly, the court had adequate grounds to assume jurisdiction.

III. TERMINATION

Respondent next contends that the circuit court erred in terminating his parental rights. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g) and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

We first note that MCL 712A.19b(3)(g) was amended effective June 12, 2018, before respondent's child was born. Even so, the circuit court relied on the old statutory language, which did not require any determination of the parent's financial ability to provide proper care and custody. Given the court's error, we cannot affirm the termination of respondent's parental rights under factor (g).

However, only one ground is required and termination was supported under factor (j). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). The court correctly found that respondent had done "absolutely nothing" toward gaining custody of his child. Respondent did not complete services provided in jail because he did not "want[] to." Despite that the case worker had visited respondent in jail, provided her contact information and the case service plan, and advised respondent of his duty to make contact, respondent never reached out to the case worker. He participated in no services, continued to abuse substances, and was repeatedly arrested for violating the terms of his parole. Respondent

never even met NW. Respondent clearly demonstrated that he would take no responsibility for his child, let alone that he could safely tend to the child's special needs. This evidence more than adequately supported the termination decision.

We affirm.

/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens