*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GRIGGS, Minors.

UNPUBLISHED
June 9, 2022

No. 359433
Wayne Circuit Court
Juvenile Division
LC No. 21-000213-NA

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights to CRG, LMG, CMG, and SLG under MCL 712A.19b(3)(b)(*i*) (the child or the child's sibling suffered physical abuse by the parent's act and there is a reasonable likelihood the child will suffer abuse in the future if placed with parent), (j) (reasonable likelihood that the child will be harmed if returned to parent's home), and (k)(*iii*) (parent battered, tortured, or severely abused the child or the child's sibling and there is a reasonable likelihood of harm to the child if returned to the parent).[1] We affirm.

## I. BACKGROUND

This matter began when a petition was filed in March 2021 concerning CRG, LMG, and CMG. In relevant part, the petition alleged that respondent had sexually abused her step-daughter, who is CRG, LMG, and CMG's half sister. The petition also alleged that respondent had provided her step-daughter with marijuana. The petition requested that the trial court authorize the petition, remove the children from respondent's care, exercise jurisdiction, and terminate respondent's parental rights.

After a preliminary hearing, the trial court authorized the petition and ordered that the children be placed with their legal father. Respondent was ultimately granted supervised parenting time via telephone and Zoom. Respondent later pleaded *nolo contendere* to allegations in the petition to support the existence of statutory grounds for the trial court to exercise jurisdiction and

---

[1] The children all share the same legal father. He is not a party to this appeal.

for termination of her parental rights. Based on respondent's plea, the trial court exercised jurisdiction and concluded that statutory grounds existed to terminate respondent's parental rights to CRG, LMG, and CMG.

In May 2021, respondent gave birth to SLG, who was placed with her legal father. A petition was filed seeking termination of respondent's parental rights to SLG. The petition was authorized, and respondent was not permitted to have in-person visitation with SLG. During a June 2021 hearing, respondent pleaded *nolo contendere* to certain allegations in the petition. Based on respondent's plea, the trial court exercised jurisdiction and noted that the parties had agreed to proceed to the best-interest portion of the proceeding with respect to SLG.

In September 2021, the best-interest hearing was held. The trial court admitted an evaluation from the Clinic for Child Study, and respondent and the children's father testified. At the close of proofs, the trial court held that it was in the children's best interests to terminate respondent's parental rights. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues in a cursory manner that "[a] treatment plan should have been offered" because respondent "was willing to successfully address her problems." We disagree that respondent was entitled to a case service plan.

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). MCL 712A.19a(2)(a) provides that reasonable efforts to reunify the family are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law. . . ." MCL 722.638, which is contained in the Child Protection Law, provides:

> (1) The department shall submit a petition for authorization by the court . . . if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.
>
> * * *
>
> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator . . . the department shall include a request for termination of parental rights at the initial dispositional hearing. . . .

Under MCR 3.977(E):

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> > (1) the original, or amended, petition contains a request for termination;
> >
> > (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
> >
> > (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
> >
> > > (a) are true, and
> > >
> > > (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);
> >
> > (4) termination of parental rights is in the child's best interests.

In its petition, the Department of Health and Human Services (DHHS) sought termination at the initial dispositional hearing under MCL 722.638 based on allegations that respondent had sexually abused the children's half sister. During a May 14, 2021 hearing in relation to the petition filed concerning CRG, LMG, and CMG, petitioner noted that respondent had agreed to "make admissions" and plead *nolo contendere* to certain allegations to support the existence of statutory grounds for the trial court to exercise jurisdiction and for termination of her parental rights. It was also noted that respondent would be unable to challenge the trial court's exercise of jurisdiction and findings that statutory grounds existed to support termination on appeal if she pleaded *nolo contendere*. Counsel for respondent agreed, but noted that respondent would have "remedies [on appeal] within the best interests factors." Respondent then pleaded *nolo contendere* to allegations that she had engaged in sexual penetration with her step-daughter multiple times. During a June 2021 hearing with respect to the petition that was filed concerning SLG, respondent pleaded *nolo contendere* to the same allegations.

Based on respondent's pleas, the trial court concluded that statutory grounds for termination were established under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*iii*).[2] In so concluding the

---

[2] Although the trial court stated on the record that statutory grounds existed to support termination under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*), the trial court's written order concluded that termination was proper under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*iii*). It is well established that a court speaks through its written orders, not oral pronouncements. See *In re KMN*, 309 Mich App

trial court found that respondent had sexually abused her step-daughter and that there was a lack of evidence that respondent would be rehabilitated "within a reasonable period of time" given her predatory actions and lack of insight. As will be discussed later in this opinion, the trial court also concluded that termination was in the children's best interests.

In light of its stated findings, the trial court satisfied the requirements under MCR 3.997(E) necessary to terminate respondent's parental rights at the initial dispositional hearing. The trial court's findings amount to a judicial determination that respondent subjected the children's half sister to aggravated circumstances as provided in MCL 722.638(1)(a)(*ii*). Therefore, under MCL 712A.19a(2)(a), DHHS was not required to make reasonable efforts to reunite respondent with the children, and respondent's argument that she should have been permitted to complete a case service plan has no merit. See *In re Rippy*, 330 Mich App at 359.

## III. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We conclude that respondent waived appellate review of this issue.

As already stated, respondent entered *nolo contendere* pleas to the petitions and stipulated that statutory grounds existed to support termination of her parental rights. Respondent does not allege that her *nolo contendere* pleas or the stipulations to the existence of statutory grounds for termination were not voluntary, accurate, and knowingly given. See *In re Pederson*, 331 Mich App 445, 464; 951 NW2d 704 (2020) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.") (Quotation marks and citation omitted.) Indeed, respondent does not argue that there were any issues with her pleas. Instead, respondent seeks to challenge whether the trial court clearly erred by concluding that clear and convincing evidence supported that statutory grounds existed to support termination. By entering *nolo contendere* pleas and by stipulating to the existence of statutory grounds for termination, however, respondent effectively waived any challenge to the trial court's conclusion that statutory grounds existed to support termination of her parental rights. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute."). Consequently, we decline to address the merits of respondent's statutory grounds argument.

## IV. BEST INTERESTS

Respondent next argues that the trial court improperly concluded that termination of her parental rights was in the children's best interests. We disagree.

---

274, 287; 870 NW2d 75 (2015) ("a court speaks through its written orders and judgments, not through its oral pronouncements") (quotation marks and citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We review the trial court's best-interest determination for clear error. *Id*.

This Court focuses on *the children*—not the parent—when reviewing best interests. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citation omitted).]

The evidence supports that the children would not be safe with respondent. Respondent sexually assaulted the children's half sister on multiple occasions between June and October 2020. During an evaluation, respondent indicated that DHHS became involved because "[t]hings got strange. . . ." Respondent also indicated that she planned to, "[t]ake this as a learning experience" and to "right [her] wrong." The evaluator noted that respondent "seemed indifferent to the gravity of the situation at hand," that respondent's "insight appeared limited at times," and that respondent's "overall judgment seem[ed] poor." The evaluator also noted that respondent had resorted to manipulation, coercion, and predatory tactics to accomplish the sexual assaults against her step-daughter.

Although respondent voluntarily participated in therapy during the proceeding, respondent testified at the best-interest hearing that she was still "continuing [her] healing journey. . . ." When asked to describe the harm that respondent had caused her step-daughter, respondent simply indicated that the assaults were "[o]ut of character" for her. Respondent acknowledged that she had not voluntarily participated in any treatment programs that were tailored toward "curbing [her] impulses. . . ." This evidence demonstrates that respondent lacked awareness as to what had caused her to commit the sexual assaults against her step-daughter, that she lacked empathy, and that she required further treatment. Although respondent notes that she was not accused of sexually abusing her biological children, this is not dispositive. Indeed, the manner in which a respondent treats one child is relevant to how the respondent may treat another child. See *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) ("[h]ow a parent treats one child is certainly probative of how that parent may treat other children") (quotation marks and citation omitted; alteration in original).

At the time of termination, CRG was seven years old, LMG was five years old, and CMG was 23 months old. Respondent had not lived with the children for more than eight months[3] and she was only able to participate in supervised visitations with them via telephone and Zoom. While the visits went well, the record nonetheless supports that the children were not able to live with respondent because of her criminal actions. Additionally, four-month-old SLG was removed from respondent's care a short period of time after her birth and was not permitted to have in-person visitation with respondent, thereby rendering it highly unlikely that SLG shared a bond with respondent. The children's legal father, who was committed to providing the children with a safe and stable home, reported that the children were doing well in his care. The father opined that the risk respondent posed to the children outweighed the challenges that the children would face in the future from having respondent omitted from their lives.

For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[3] Although the petition was filed in March 2021, the children's father removed them from the home in January 2021.